Anthony THOMAS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–9409–CR–541.

Court of Appeals of Indiana.

Oct. 12, 1995.

Rehearing Denied Dec. 18, 1995.

Howard Howe, CPA, Indianapolis, for appellant.

Pamela Carter, Attorney General, Lisa M. Paunicka, Deputy Attorney General, Indianapolis, for appellee.

**OPINION**

FRIEDLANDER, Judge.

Anthony Thomas appeals his conviction of Aggravated Battery,[1] a class B felony, presenting the following restated issues for review:

I    Did the special judge err in continuing to preside over the case over Thomas's objection?

II    Did the trial court err in admitting into evidence a statement given by Thomas after the incident?

III    Did the trial court err in permitting an emergency room physician to testify about what the victim told him about the attack by Thomas?

IV    Did the trial court err in permitting a police officer to testify about statements made to the officer by the victim regarding the attack?

V    Was the evidence sufficient to support the judgment?

We affirm.

---

1.  Ind.Code 35–42–2–1.5.

The facts favorable to the judgment are that on November 23, 1993, Thomas and his wife, Cleora Thomas, began arguing while in a car which was parked at a gas station. The argument escalated until Thomas attacked Cleora, struck her in the face, and bit her in the face, eye and arms. Thomas and Cleora returned home, but because of the severity of her injuries, Cleora went to the hospital later that day. At the hospital, Cleora was examined by Dr. Steven Massicotte. Dr. Massicotte observed several bite marks on Cleora's face and arms. Dr. Massicotte determined that the most serious injury had occurred to Cleora's left eye as a result of having been bitten by Thomas. Dr. Massicotte and several other ophthalmology specialists determined that the injuries to Cleora's left eye were "severe enough that the eye would not be salvageable." *Record* at 279. Cleora's left eye was surgically removed. Thomas was charged with aggravated battery and convicted following a jury trial.

### I

Thomas contends that the special judge erred in continuing to preside after Thomas expressed his wish that the regular judge, and not the special judge, preside over trial.

■ Thomas correctly concedes that a defendant is deemed to have acquiesced in the appointment of a special judge and to have waived any objection thereto by originally accepting the appointment and submitting to the special judge's jurisdiction. *See Survance v. State* (1984), Ind., 465 N.E.2d 1076; *Marts v. State* (1982), Ind., 432 N.E.2d 18. Thomas argues, however, that "this should not be the case where the acceptance was not given with full understanding of alternatives or confidence in the special judge." Appellant's Brief at 14. Leaving aside for the moment the legal merit of Thomas's contention, the record does not support the factual basis upon which the contention rests, i.e., that Thomas's acceptance of the special judge was unknowing. At the outset of trial, the following colloquy occurred between the court, in this case the special judge, and Thomas:

*"The Court:* ... Do you accept me as special judge in this case?
*Defendant Thomas:* Yes, I have to.
*The Court:* Excuse me, sir?
*Defendant Thomas:* Yes, ma'am.
*The Court:* All right, are you sure?
*Defendant Thomas:* Yes, ma'am.
*The Court:* You understand you do not have to accept me as Special Judge.
*Defendant Thomas:* What would be the repercussions if I didn't accept you?
*The Court:* Sir, there would be no repercussions. Would you like a few minutes to discuss it with your attorney to be sure?
*Defendant Thomas:* Yes, ma'am. I accept you as Special Judge."

*Record* at 115–17. The record does not support Thomas's claim that his acquiescence in the special judge presiding over the case was unknowing or involuntary. The failure to request a change when specifically questioned on the matter at the outset of trial constituted acquiescence to the special judge presiding over trial and waived the issue for purposes of appeal. *Survance, supra; Marts, supra.*

■ Moreover, a party may not submit matters to and await rulings by a special judge before objecting to the special judge's presence in the action. *Cf. Singleton v. State* (1977), 173 Ind.App. 606, 364 N.E.2d 1041 (party may not await outcome of proceeding and then object to presiding judge on grounds available at the outset of trial). Following this colloquy, the trial court entertained several motions pertaining to evidence. The court ruled against Thomas on each of the evidentiary questions. It was only after receiving the adverse rulings that Thomas expressed a preference to have the regular judge assume authority over Thomas's trial. The trial court properly denied Thomas's request for a change of judge.

### II

On December 2, 1993, Detective James Leisure took a recorded statement from Thomas in which Thomas admitted the physical attack upon Cleora. Thomas later submitted a motion to suppress the statement at trial on the ground that he was intoxicated at

the time he gave the statement and therefore the statement was not voluntary. The motion to suppress was denied and the statement was admitted over Thomas's objection. Thomas appeals the admission of the statement.

■ In order for a confession to be admissible, the State must prove that it was preceded by a knowing waiver of the privilege against self-incrimination and the right to counsel, and that the waiver was voluntary. *Johnson v. State* (1992), Ind., 584 N.E.2d 1092, *cert. denied,* 506 U.S. 853, 113 S.Ct. 155, 121 L.Ed.2d 105. The determination as to the voluntariness of a confession is made after a consideration of the totality of the circumstances in which it was given. *Dudley v. State* (1985), Ind., 480 N.E.2d 881. When a defendant claims that he was under the influence of alcohol at the time of the giving of a statement, the degree of impairment is of critical importance in determining whether the statement was voluntary. *Gregory v. State* (1989), Ind., 540 N.E.2d 585. When the evidence of intoxication is conflicting, we consider only that evidence which tends to support the trial court's ruling. *Id.* With regard to the level of intoxication necessary to render a confession involuntary, our supreme court has stated:

> "It is only when an accused is so intoxicated that he is unconscious as to what he is saying that his confession will be inadmissible. Intoxication to a lesser degree goes only to the weight to be given the statement and not to its admissibility." *Id.* At 592.

■ At the hearing on the motion to suppress, Thomas testified that he had been drinking heavily on the day he gave the statement and that he had ingested muscle relaxers. Detective Leisure, on the other hand, testified that prior to giving the statement, Thomas claimed to have had only a couple of drinks and stated that he was not intoxicated. Detective Leisure further testified that Thomas was lucid and well coordinated, and that he was not, in Detective Thomas's opinion, intoxicated. Although Thomas may have ingested alcohol earlier in the day, Detective Leisure's testimony establishes that Thomas was not intoxicated to such an extent as to prevent him from executing a knowing and voluntary waiver of rights. *Gregory, supra.* The trial court did not err in admitting Thomas's confession.

## III

■ After the incident, Cleora was taken to the Adult Out–Patient Center adjacent to University Hospital at Indiana University Medical Center, where she was treated by Dr. Massicotte. Dr. Massicotte asked Cleora what caused her injuries and she responded that she had been in a fight with her "significant other", *Record* at 262, and that the fight had included biting. Prior to trial, Cleora argued that Dr. Massicotte should not be allowed to testify about any statements she made to him in the hospital because those were privileged statements and she wished to invoke the physician-patient privilege. At trial, Thomas objected to Dr. Massicotte's testimony upon grounds that the testimony was hearsay, and that the communication was a privileged physician-patient communication. The trial court overruled the objection and permitted Dr. Massicotte to relate his conversation with Cleora.

Ind.Code 34–1–14–5 provides, in relevant part:

> "The following persons shall not be competent witnesses:
>
> \*    \*    \*    \*    \*    \*
>
> Fourth. Physicians, as to matter communicated to them, as such, by patients, in the course of their professional business, or advice given in such cases, except as provided in IC 9–4–4.5–7."

IC 34–1–14–5 creates a privilege for the benefit of the patient, and protects communications necessary to treatment or diagnosis looking toward treatment. *Corder v. State* (1984), Ind., 467 N.E.2d 409. The privilege is held by the patient and only the patient, or his heirs or personal representatives after his death, may waive the privilege. *Canfield v. Sandock* (1990), Ind., 563 N.E.2d 526. The privilege may be waived either expressly or by implication. *Baker v. Whittaker* (1962), 133 Ind.App. 347, 182 N.E.2d 442.

At approximately 7:00 a.m. on November 29, 1993, Cleora called the Indianapolis Police Department and spoke with Detective Leisure. Cleora briefly informed Detective Leisure about the details of the attack. Although Detective Leisure did not reveal precisely what Cleora related to him during their telephone conversations, it is clear that, at a minimum, she related the identity of her attacker and the general details of the attack. The testimony offered by Dr. Massicotte addressed the same subject matter. That is, Dr. Massicotte related statements made by Cleora regarding the identity of her attacker and the details of how her wounds were inflicted. In relating the details of the attack to Detective Leisure, Cleora impliedly waived the privilege with respect to statements made to Dr. Massicotte pertaining to the same subject matter as was discussed with Detective Leisure. *Id.; cf. Taylor v. State* (1992), Ind., 587 N.E.2d 1293 (a statement written for the defendant's attorney which was seized during a police raid was not excluded by the attorney-client privilege in part because the statement consisted of information voluntarily given to police during the initial interview).

Thomas contends that Dr. Massicotte's testimony should have been excluded as hearsay. Rule 803(4) of the Indiana Rules of Evidence provides:

"The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

\*  \*  \*  \*  \*  \*

(4) **Statements for Purposes of Medical Diagnosis of Treatment.** Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

Dr. Massicotte testified that ascertaining the cause of an injury is important "because the treatment of the patient really depends upon what you're told by the patient." *Record* at 260. Therefore, he stated that he questioned Cleora when he first examined her as to how she sustained her injuries as an important first step in determining the appropriate course of treatment. Of particular importance to Dr. Massicotte was the fact that Cleora had sustained a human bite wound:

[Dr. Massicotte] "In cases of trauma it's important for us to know that a patient has actually been bitten and especially by a human because the bacteria that are harbored in the human mouth are very, very different ones. And they require very special and specific antibiotic treatment." *Record* at 263.

Cleora's statements to Dr. Massicotte regarding the cause of her injuries were made for the purpose of diagnosing and treating her injuries. Therefore, pursuant to I.R.E. 803(4), the statements were not excluded by the hearsay rule and the trial court did not err in allowing Dr. Massicotte to testify in that regard.

## IV

Thomas contends that the trial court erred in permitting Detective Leisure to testify regarding statements made to him by Cleora in the course of his investigation. Detective Leisure testified that Cleora told him that she was afraid of Thomas. Even assuming, but without deciding, that the testimony was erroneously admitted, the error was harmless.

In order for the erroneous admission of evidence to constitute reversible error, the error must result in prejudice to the defendant. *Gray v. State* (1991), Ind., 579 N.E.2d 605. The introduction of inadmissible evidence which was merely cumulative of other evidence properly before the jury is not prejudicial. *Traver v. State* (1991), Ind., 568 N.E.2d 1009. We have decided in Issues II and III that the trial court did not err in admitting both Thomas's confession to the police and Dr. Massicotte's testimony regarding Cleora's explanation of how she received her injuries. In view of this overwhelming evidence of Thomas's guilt, we are satisfied beyond a reasonable doubt that Detective Leisure's testimony did not contribute to the jury's guilty verdict. The trial court did not commit reversible

error in admitting the evidence. *See Rabadi v. State* (1989), Ind., 541 N.E.2d 271.

## V

Thomas contends that the evidence was insufficient to support the judgment. Specifically, Thomas contends that the State failed to prove the requisite mental element for the offense of aggravated battery.

When reviewing for the sufficiency of evidence, we neither reweigh evidence nor judge witness credibility, but examine only the evidence favorable to the judgment and the reasonable inferences to be drawn therefrom. *Jenkins v. State* (1993), Ind., 627 N.E.2d 789, *cert. denied,* —— U.S. ——, 115 S.Ct. 64, 130 L.Ed.2d 21. With regard to the sufficiency of evidence on the question of intent, our supreme court has stated:

"Intent is a mental function and, absent admission, it must be determined by courts and juries from a consideration of the defendant's conduct and the natural and usual consequences of such conduct. [Citation omitted.] Because intent is a mental state, the trier of fact must usually resort to reasonable inferences based upon an examination of the surrounding circumstances to determine whether, from the person's conduct and the natural consequences that might be expected from that conduct, a showing or inference the intent to commit that conduct exists." *Metzler v. State* (1989), Ind., 540 N.E.2d 606, 609.

The evidence favorable to the judgment reveals that Thomas and Cleora quarreled and that the quarrel escalated to the point that Thomas struck and bit Cleora. The fact that Thomas bit Cleora multiple times, coupled with the obvious severity of the injuries to Cleora's left eye, as reflected in photographs taken shortly after the incident, belie Thomas's claim that he did not intend to inflict serious injury during the attack.

The evidence was sufficient to permit a reasonable inference that Thomas possessed the requisite mens rea for the offense of aggravated battery at the time of the occurrence.

Judgment affirmed.

KIRSCH and NAJAM, JJ., concur.