**Billy Wayne NASH, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 45A03–0101–CR–10.**

Court of Appeals of Indiana.

Sept. 12, 2001.

Jeffrey Schlesinger, Appellate Public Defender, Crown Point, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Martha Warren–Rosenfeld, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

A jury convicted Billy Wayne Nash of rape,[1] a Class B felony, and confinement,[2] a Class D felony. He now appeals presenting the following issues for our review:

I. Whether the trial court erred by permitting, pursuant to Ind. Evidence Rule 803(4), a nurse who examined the victim to testify, over Nash's hearsay objection, that the victim told the nurse that her estranged husband had raped her.

II. Whether the trial court erred by admitting medical records, which contained the description of the

---

1. *See* IC 35–42–4–1.

2. *See* IC 35–42–3–3.

attack, as records of regularly conducted business activity.

III. Whether the trial court abused its discretion in sentencing.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts most favorable to the jury's verdict reveal that on March 29, 2000, K.N. had been married to Nash for eight years. The couple had recently separated, Nash had moved out of the apartment they had shared, left the state to visit his mother, but still had a key to the apartment. On March 29, as K.N. arrived home from her job as a newspaper delivery person, Nash shocked her by jumping out of a closet, grabbing her, and ordering her to be quiet or he would kill her and their five-year old daughter. After telling K.N. to undress, Nash began to "jerk" off her clothing, took off his own clothing, ordered her to lie down on the bed, forced her legs apart, and penetrated her with his penis while wearing a condom.

Nash then tied K.N.'s arms, wrists, knees, and ankles with a pair of nylons so she could not move, cut her fingernails to prevent detection of his skin, scrubbed underneath her fingernails with a toothbrush, stuffed a rag in her mouth, and taped her mouth shut with clear packing tape. Later in the day, K.N. was able to escape from Nash, report the incident to the police, and obtain medical assistance at the emergency room of St. Mary Medical Center.

The State subsequently charged Nash with rape and confinement, and the jury found him guilty of these offenses. After merging the confinement conviction into the rape conviction, the trial court sentenced Nash to serve twelve years' imprisonment with two years suspended to probation. He now appeals.

## DISCUSSION AND DECISION

Nash initially claims that the trial court erred by admitting a hearsay statement K.N. made to Kari Thompson, an emergency room nurse, which identified her estranged husband as her attacker. The State maintains that the trial court properly admitted K.N.'s statement to Nurse Thompson because it assisted Nurse Thompson in providing K.N. the proper medical care and treatment she needed. We agree with the State.

Hearsay is a statement, other than one made by the declarant while testifying at trial, offered to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay is inadmissible unless admitted pursuant to a recognized exception. Evid. R. 802. In order for a hearsay statement to be admissible as a statement made for purposes of medical diagnosis or treatment, the following elements must be established: (1) it must be made for the purpose of medical diagnosis or treatment; (2) describe medical history, symptoms, pain, sensations, "or the inception or general character of the cause or external source;" and (3) be "reasonably pertinent to diagnosis or treatment." Evid. R. 803(4); *See also Vest v. State*, 621 N.E.2d 1094, 1096–97, n. 1 (Ind.1993); *Thomas v. State*, 656 N.E.2d 819, 823 (Ind.Ct.App. 1995); *Coffey v. Coffey*, 649 N.E.2d 1074, 1078 (Ind.Ct.App.1995); *Fleener v. State*, 648 N.E.2d 652, 658 (Ind.Ct.App.1995).

Hearsay is admitted under this exception because the reliability of the out-of-court statement is assured based upon the belief that a declarant's self-interest in seeking medical treatment renders it unlikely the declarant will mislead the person that she wants to treat her. *McClain v. State*, 675 N.E.2d 329, 331 (Ind.1996). The underlying rationale for this hearsay exception requires a two-step analysis for evaluating whether a statement is properly

admitted pursuant to Evid. R. 803(4): (1) whether the declarant is motivated to provide truthful information in order to promote diagnosis and treatment; and (2) whether the content of the statement is such that an expert in the field would reasonably rely upon it in rendering diagnosis or treatment. *Id.*

On appeal, Nash concedes that K.N. was motivated to provide truthful information to Nurse Thompson to promote diagnosis and treatment. Therefore, we turn to the second step of the analysis to determine whether the statement qualifies as one that an expert would reasonably rely upon in providing a diagnosis or treatment. Specifically, we must determine whether the statement of a rape victim given to an attending emergency room nurse that her estranged husband had raped her is admissible pursuant to Evid. R. 803(4). This question has not been directly addressed in Indiana.

Prior to adoption of the Indiana Rules of Evidence, Indiana case law did not allow the use of a statement that specifically named the person responsible for an injury for the sole purpose of proving the identity of this person. *Vest*, 621 N.E.2d at 1097 n. 1. In *Myers v. State*, 617 N.E.2d 553, 558 (Ind.Ct.App.1993), we held that the trial court did not err in allowing a physician who examined a child molestation victim to testify that the victim told him that her uncle attempted to insert his penis into her vagina. In so holding, we reasoned that the statement was repeated by the physician as information reasonably relevant to the purpose of the examination rather than to prove the truth of what the victim said. Furthermore, the statement was brief, without detail, and no names were specifically mentioned.

■ Adoption of the Rules has not changed the rule disallowing hearsay statements for the purpose of proving fault. *See e.g., Thomas*, 656 N.E.2d at 823; *Coffey*, 649 N.E.2d at 1078; *Fleener*, 648 N.E.2d at 658. Hearsay statements admissible for the purpose of medical diagnosis or treatment typically do not involve statements of identity because identity of the person responsible for the injury is usually not necessary to provide effective medical care. Nevertheless, in *Thomas*, 656 N.E.2d at 822, during an aggravated battery jury trial, the trial court allowed an emergency room physician to testify that the victim told the physician that her "significant other" had physically attacked her and that the assault included being bitten. The physician testified that it was important for the emergency room staff to determine the cause and source of injury, especially in the case of a human bite, so that appropriate medical treatment could be provided. In upholding the trial court's decision to admit this testimony, we determined that the victim's statement with regard to the cause of her injuries was made for the purpose of diagnosing and treating her injuries pursuant to Evid. R. 803(4). *Id.* at 823.

Moreover, in child abuse cases a number of jurisdictions have admitted statements of children identifying an individual as the perpetrator of the offense. 2 JOHN W. STRONG, MCCORMICK ON EVIDENCE § 278 (4th ed. 1992) (citations omitted); *Blake v. State*, 933 P.2d 474, 477 n. 2 (Wyo.1997) ("an overwhelming majority of jurisdictions, including at least thirty-two states and four federal circuits allow into evidence statements regarding the identity of the perpetrator in child physical or sexual assault cases"). The reason for allowing such testimony is "that knowledge of the perpetrator is important to the treatment of psychological injuries that may relate to the identity of the perpetrator and to the removal of the child from the abuser's custody or control." 2 JOHN W. STRONG, MCCORMICK ON EVIDENCE § 278 at n. 9. In *United States v. Renville*, 779 F.2d 430,

437–38 (8th Cir.1985), the court explained that the identity of the child abuser is not only pertinent to treating the child's emotional and psychological injuries, but also necessary to prevent a child from being returned to an abusive environment. Accordingly, where a child abuser is a member of the family or household, this person's identity is particularly pertinent to the medical personnel's recommendation with respect to treatment. *Id.*

The Tenth Circuit in *United States v. Joe,* 8 F.3d 1488, 1494–95 (10th Cir.1993), *cert. denied,* 510 U.S. 1184, 114 S.Ct. 1236, 127 L.Ed.2d 579 (1994), extended the rationale used in child abuse cases to the precise situation we are confronted with in this appeal. There, the statement of a rape victim made to an attending physician that her estranged husband had raped her was admitted pursuant to Federal Rule of Evidence 803(4). The *Joe* court reasoned that:

> All victims of domestic sexual abuse suffer emotional and psychological injuries, the exact nature and extent of which depend on the identity of the abuser. The physician generally must know who the abuser was in order to render proper treatment because the physician's treatment will necessarily differ when the abuser is a member of the victim's family or household. In the domestic sexual abuse case, for example, the treating physician may recommend special therapy or counseling and instruct the victim to remove herself from the dangerous environment by leaving the home and seeking shelter elsewhere. In short, the domestic sexual abuser's identity is admissible under Rule 803(4) where the abuser has such an intimate relationship with the victim that the abuser's identity becomes "reasonably pertinent" to the victim's proper treatment.

*Id.* (footnote omitted).

■ Here, as part of her medical examination following the rape, K.N. was questioned about whether she was in a domestic violence situation and responded affirmatively to the question. *Appellant's Appendix* at 434. She further indicated that she needed help and was provided information in this respect. Part of Nurse Thompson's job is to assess and treat patients, which includes providing recommendations to patients concerning domestic violence resources when needed. Accordingly, under the circumstances of the present case, we conclude that the statement of identity was reasonably pertinent to the effort of the emergency room staff in treating K.N., to identifying the underlying cause of the sexual abuse and in seeking to prevent further domestic abuse.

Ultimately, we acknowledge the general rule that statements attributing fault or identity are typically inadmissible under Evid. R. 803(4). However, in cases such as the present one where injury occurs as the result of domestic violence, which may alter the course of diagnosis and treatment, trial courts may properly exercise their discretion in admitting statements regarding identity of the perpetrator.

■ Nash next argues that the portion of the medical records containing K.N.'s statements that she had been raped by her husband were inadmissible under the records of regularly conducted business activity exception to the hearsay rule. He contends that this portion of the records does not fall within the hearsay exception because the person recording the information did not have personal knowledge of whether she was raped.

 Under Evid. R. 803(6), records of regularly conducted business activity are admissible provided that certain requirements are met. *Jennings v. State,* 723 N.E.2d 970, 973 (Ind.Ct.App.2000); *Ground v. State,* 702 N.E.2d 728, 730 (Ind. Ct.App.1998). The rule specifically provides:

> A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time *by, or from information transmitted by, a person with knowledge,* if kept in the course of regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony or affidavit of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate a lack of trustworthiness. The term "business" as used in this Rule includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

Evid. R. 803(6) (emphasis added). Here, Nurse Thompson made the entries in the medical records from personal information supplied by K.N. in the regular course of the hospital's business. The rule encompasses statements made by a person with personal knowledge to a person with a business duty to record such knowledge. Further, entries in business records are rebuttably presumed to have been made by a person with personal knowledge of the entry and a duty to record the information. *Ground,* 702 N.E.2d at 731 ("Absent rebuttal evidence to the contrary, it may be presumed that someone with personal knowledge prepared the challenged ... documents"). Nash has not rebutted this presumption. Accordingly, the trial court could have properly admitted the records containing K.N.'s statement pursuant to the business records exception.

Nash finally claims that the trial court abused its discretion by imposing an aggravated sentence based upon a fact the jury rejected, namely whether the crimes were committed while he was armed with a deadly weapon. He claims that the State originally charged him with rape as a Class A felony and confinement as a Class B felony, both of which contain the element of being committed while armed with a deadly weapon. The jury however returned a verdict finding him guilty of rape as a Class B felony and confinement as a Class D felony, neither of which contain the deadly weapon element. Given the verdict, Nash contends that at the sentencing hearing the trial court erred by noting the following nature and circumstances of the crime: "while armed with a knife, [he] force[d] the victim, his estranged wife, to submit to sexual intercourse and did confine her in the process." *Transcript* at 367.

 Sentencing decisions are entrusted to the sound discretion of the trial court, are given great deference, and will only be reversed for an abuse of discretion. *Blanche v. State,* 690 N.E.2d 709, 714 (Ind.1998). The trial court's sentencing discretion includes the determination of whether to increase the presumptive penalties, and in so doing, determining which aggravating and mitigating circumstances to consider, and the weight to accord each of these factors. *Allen v. State,* 719 N.E.2d 815, 817 (Ind.Ct.App.1999), *trans. denied* (2000). The sentencing court has the discretion to determine whether a sentence should be enhanced based upon legitimate aggravating factors. *Carlson v. State,* 716 N.E.2d 469, 471 (Ind. Ct.App.1999). Further, it is well established that the existence of a single valid aggravating circumstance is sufficient to

support the imposition of an enhanced sentence. *Noojin v. State,* 730 N.E.2d 672, 678 (Ind.2000) (citing *Thacker v. State,* 709 N.E.2d 3, 10 (Ind.1999)); *Buchanan v. State,* 699 N.E.2d 655, 657 (Ind.1998).

 Initially, we note that the trial court in articulating the nature and circumstances of the crime in its written sentencing order did not mention that the crimes were committed while armed with a knife. *Appendix* at 30. In any event, both at the sentencing hearing and in its written sentencing order, the trial court noted the following aggravating circumstances: (1) a risk that Nash would commit another crime given his criminal history; (2) his prior criminal history, including a juvenile record and an adult conviction for Class B felony robbery; (3) his need for correctional and rehabilitative treatment that could be best provided by his commitment to a penal facility based upon the fact that his prior incarceration had no deterrent effect; (4) the commission of a sex crime creating an epidemiologically demonstrated risk of transmitting HIV; and (5) that he laid in wait for the victim and resorted to extraordinary means to conceal the crime. Nash does not argue that the trial court improperly relied upon any of these aggravating circumstances in sentencing him. As mentioned, the existence of a single, valid aggravating circumstance is enough to support enhancement of a presumptive sentence. Here, the trial court could have properly relied upon any one of these aggravating circumstances. Therefore, we cannot conclude that the trial court abused its discretion in sentencing Nash.

Affirmed.

BAILEY, J., and BROOK, J., concur.