**Regunal R. DOWELL, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 32A01–0606–CR–263.

Court of Appeals of Indiana.

May 10, 2007.

Paula M. Sauer, Danville, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Ann L. Goodwin, Special Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

After a jury trial, Regunal R. Dowell was convicted of criminal confinement[1] as a Class D felony, criminal deviate conduct[2] as a Class B felony, and three counts of rape,[3] each as a Class B felony. Dowell raises four issues on appeal, which we restate as:

I. Whether the testimony of the nurse who treated the victim was admissible.

II. Whether the trial court properly denied Dowell's motion to correct error based on a juror's affidavit stating that he was influenced by the jury's discussion that Dowell did not testify because he had a prior conviction for a similar offense.

III. Whether Dowell's sentence was appropriate based on the nature of the offense and his character.

IV. Whether there was a discrepancy between the trial court's oral and written sentences that warranted a sentencing revision.

We affirm.

## FACTS AND PROCEDURAL HISTORY

In September 2005, R.B. began dating Dowell. They became intimate and had sexual relations nearly every day up until mid October. Their relationship became more infrequent when R.B. moved and took on family obligations.

On October 19, 2005, R.B. went to Dowell's home after work. The two left for a pub when Dowell began smoking marijuana, which R.B. did not like. R.B. told Dowell that she wanted to discontinue the relationship because he would not stop using marijuana but that they could remain friends. Dowell did not take R.B. seriously.

At the pub, Dowell asked R.B. if they could still have sex. R.B. clearly indicated no. They spent nearly two and a half hours at the pub. Dowell drank several beverages while R.B. had three during that time, two of which Dowell helped finish. They both left the pub with Dowell driving. R.B. testified that she felt fine for the first ten minutes of the ride, but then suddenly felt nauseated and began to vomit, a feeling she said she had never experienced before while drinking.

When they arrived at Dowell's residence Dowell ordered R.B. out of his car. R.B. complied and then tried to remain outside, but Dowell dragged her into his garage by her hair. R.B. began to vomit again into a trashcan in the garage. While R.B. leaned over the trashcan, Dowell came from behind her and reached around her to pull down her pants and underwear. R.B. resisted, but Dowell raped her. As R.B. struggled more, Dowell grabbed her neck and hair and dragged her into the house. Dowell pushed R.B. into a bathroom where she continued to vomit. He again raped

1. *See* IC 35–42–3–3.

2. *See* IC 35–42–4–2.

3. *See* IC 35–42–4–1.

her. When he could not maintain an erection, he digitally penetrated R.B.'s vagina while she begged him to stop.

Dowell struck R.B. several times in the head yet she still continued her attempt to flee. Eventually, R.B. lost consciousness and later awoke in Dowell's upstairs bedroom. She crawled to the bathroom to vomit more. Dowell yelled at her about their relationship and raped and digitally penetrated her again. R.B. continued to beg him to stop, but Dowell pulled her hair back straining her neck and then digitally penetrated her anus. Then, Dowell raped R.B. again. He strangled R.B. until she lost consciousness. When she awoke she was able momentarily to force Dowell out of the bathroom where she locked herself in. Dowell removed the door handle and dragged R.B. into the bedroom. They struggled on the bed and then fell on the floor with Dowell falling on top of R.B. R.B. testified that she lost her memory at that point until she woke up in his bed the next morning. She immediately fled and went home to call the police.

An ambulance came and took her to the Center of Hope in Indianapolis. There, R.B. received sexual assault treatment from nurse practitioner Stacy Lobodzinski. R.B. recounted the story above. She complained of a headache, nausea, and soreness in her vaginal area. Lobodzinski noted multiple bruises on her neck, chin, left thigh, and abrasion and bite mark on her stomach. She had lacerations in her rectum and vagina. A CAT scan was performed and R.B. was given treatment to prevent pregnancy, to prevent sexual transmitted diseases, and dull her pain and nausea. A drug screen, performed to determine if R.B. had been drugged, was negative.

Dowell was charged with three counts of rape, one count of criminal confinement, and one count of criminal deviate conduct. At trial, both R.B. and Lobod-zinski testified. Over Dowell's objection of authenticity, R.B.'s medical records of her examination were admitted. The records contained Lobodzinski's and a social worker's narratives. During Lobodzinski's questioning the State asked her whether R.B. indicated she wished to prosecute Dowell. Dowell objected to the question and the State responded that the information was gained during the course of a medical examination, and, thus, qualified as an exception to the hearsay rule under Indiana Evidence Rule 803(4). The trial court overruled Dowell's objection, and the question was answered. Lobodzinski also testified that vomiting and urinating prior to a date-rape drug screen, both of which R.B. did prior to her test, could undermine a drug's detection.

During the trial, a juror submitted a question asking: "has this defendant ever had this type of charge before confinement?" *Tr.* at 265, 268. The parties and the court stipulated that the question was inappropriate, and the court admonished the jury. After a three-day trial, the jury convicted Dowell as charged.

Six days later, Dowell filed a motion to set an emergency hearing and assemble jurors because of their misconduct. Dowell alleged that his former father-in-law, Darrell Deakin, spoke with a juror who said that the jury considered Dowell's failure to testify and his prior criminal history. The State responded claiming that Dowell was impermissibly attacking the jury's verdict in violation of Indiana Evidence Rule 606(b). The trial court denied the motion on the bases that the affidavit included hearsay, that it did not identify any particular juror, that Dowell had an opportunity to poll the jury at the end of trial, but chose not to, and that Dowell's motion constituted an impermissible attack on the jury's verdict.

Over a month later, Dowell filed a motion to reconsider and attached an affidavit from a juror stating in part:

6. While we were deliberating, extraneous information, which was not presented as evidence during the trial, was a topic of discussion.

7. The extraneous information discussed among some of the jurors during deliberations included the fact that [Dowell] failed to testify on his own behalf, and the reasons why he failed to testify were discussed.

8. The jurors discussed that [Dowell] did not testify because he had a prior criminal conviction for a similar offense, and he was therefore trying to hide that fact.

9. I was influenced in my decision to vote guilty on all counts by this discussion that [Dowell] had a prior conviction for a similar offense.

*Appellant's App.* at 206. The State responded that the jury is permitted to draw upon its own common sense in rendering a verdict. The trial court again denied Dowell's motion.

At sentencing, the trial court found the following aggravating circumstances: Dowell's criminal history; that a crime of violence was committed; and that Dowell was on probation when the offenses were committed. Dowell's history in the military, family support, and employment were mitigating factors. The trial court specified that it would follow the sentence recommended in the pre-sentence investigation report. It sentenced Dowell to the Department of Correction: twenty years for Count I rape, concurrent to the twenty years for Count II criminal deviate conduct; three years for Count III criminal confinement to run consecutive to all other counts; and twenty years for Counts IV and V, both rape, concurrent to each other, but consecutive to all other convictions, for an aggregate sentence of 43 years.

Dowell now appeals. Additional facts added as necessary.

## DISCUSSION AND DECISION

### I. Hearsay Evidence

■ Dowell initially claims that the trial court erred by admitting several hearsay statements R.B. made to Lobodzinski, an emergency room nurse, which identified Dowell as her attacker. The State counters that Dowell waived this issue on appeal because he failed to continue to object to the introduction of this evidence, and, regardless, the trial court properly admitted R.B.'s statement to Lobodzinski because it fell within the exception to the hearsay rule made for statements that are for the purpose of medical diagnosis and treatment.

Here, Dowell objected to the State's questioning of Lobodzinski, specifically:

Prosecutor: Uh, and what did [R.B.] indicate as to whether or not she wished to prosecute?

Defense Counsel: Objection as to hearsay, Judge.

Trial Court: Hearsay, response.

Prosecutor: Judge, this is all information gained from her receiving medical treatment.

Trial Court: That is a proper response. Objection overruled. This is subject to cross examination and that witness has testified here as witness number four.

Prosecutor: Thank you, Judge.

Trial Court: It's the reverse of *Craig* and *Modicat, Modisett.*

Prosecutor: So did [R.B.] indicate to you as to whether she wished to prosecute at that time?

Lobodzinski: Yes.

*Tr.* at 326–27.

■ In *Nash v. State,* 754 N.E.2d 1021 (Ind.Ct.App.2001), *trans. denied,* we

discussed the admission of statements made for purposes of medical diagnosis and treatment:

> Hearsay is a statement, other than one made by the declarant while testifying at trial, offered to prove the truth of the matter asserted. Ind. Evidence Rule 801(c). Hearsay is inadmissible unless admitted pursuant to a recognized exception. Evid. R. 802. In order for a hearsay statement to be admissible as a statement made for purposes of medical diagnosis or treatment, the following elements must be established: (1) it must be made for the purpose of medical diagnosis or treatment; (2) describe medical history, symptoms, pain, sensations, "or the inception or general character of the cause or external source;" and (3) be "reasonably pertinent to diagnosis or treatment." Evid. R. 803(4); *See also Vest v. State,* 621 N.E.2d 1094, 1096–97, n. 1 (Ind.1993); *Thomas v. State,* 656 N.E.2d 819, 823 (Ind.Ct.App.1995); *Coffey v. Coffey,* 649 N.E.2d 1074, 1078 (Ind.Ct.App.1995); *Fleener v. State,* 648 N.E.2d 652, 658 (Ind.Ct.App.1995).

> Hearsay is admitted under this exception because the reliability of the out-of-court statement is assured based upon the belief that a declarant's self-interest in seeking medical treatment renders it unlikely the declarant will mislead the person that she wants to treat her. *McClain v. State,* 675 N.E.2d 329, 331 (Ind.1996). The underlying rationale for this hearsay exception requires a two-step analysis for evaluating whether a statement is properly admitted pursuant to Evid. R. 803(4):(1) whether the declarant is motivated to provide truthful information in order to promote diagno-

sis and treatment; and (2) whether the content of the statement is such that an expert in the field would reasonably rely upon it in rendering diagnosis or treatment. *Id.*

Prior to questioning Lobodzinski on R.B.'s intent to prosecute, she admitted that R.B.'s intent to prosecute was not relevant to her treatment. She answered yes to the State's question—"you told us earlier that you tell sexual assault victims that, that they will be treated regardless of whether they wish to prosecute or not." *Tr.* at 326. Therefore, it was improper hearsay evidence, and its admission was error.

■ Under Indiana Trial Rule 61, error in the admission of evidence is not grounds for reversal unless it is inconsistent with substantial justice and substantially affects Dowell's rights. *Miles,* 777 N.E.2d at 772. Further, "the error is harmless if the evidence of guilt was overwhelming and the defendant was allowed to present his defense even if not as completely as he desired." *Id.* There must be no substantial likelihood that the evidence contributed to the verdict. *Bowman v. State,* 577 N.E.2d 569, 571 (Ind.1991). Although R.B.'s intent to prosecute is not something a nurse would reasonably rely upon in providing a diagnosis or treatment, the error that resulted was harmless.

■ Here, Lobodzinski's statement was made in isolation. The remainder of Lobodzinski's testimony was related to medical treatment. Dowell was given a full and fair opportunity to cross-examine Lobodzinski and R.B., and present his own defense. *Id.* at 772–73. And, there was ample evidence outside of Lobodzinski's improper hearsay statement to support Dowell's conviction. *Id.* The admission of R.B.'s intent to prosecute statement to Lobodzinski was error, but harmless.[4]

4. Although we find the error here to be harmless, we strongly counsel prosecutors and trial

courts that statements made to medical per-

Although Dowell contends that the other portion of Lobodzinski's testimony was also impermissible hearsay, Dowell did not object at any other point during Lobodzinski's testimony. Thus, we can only review the admissibility of Lobodzinski's response above. All other instances of alleged hearsay are waived. *Miles v. State,* 777 N.E.2d 767, 771 (Ind.Ct.App.2002) (quoting *Johnson v. State,* 734 N.E.2d 530, 532 (Ind. 2000)) (" 'Failure to object at trial waives any claim of error and allows otherwise inadmissible hearsay evidence to be considered for substantive purposes and to establish a material fact at issue.' ").

Waiver notwithstanding, the State offered testimony from Lobodzinski concerning R.B.'s physical and emotional appearance, statements about her condition, and statements about how the sexual assaults transpired. Lobodzinski is a medical professional who examined and treated R.B. following her attack. All of these statements affect R.B.'s medical diagnosis and treatment.

■ Further, Lobodzinski's hearsay testimony of R.B. identifying her estranged boyfriend, Dowell, as her attacker was not improper. Common law and the new Indiana Rules of Evidence have prohibited the identity of an attacker as proof of fault under the medical records hearsay exception. *Nash,* 754 N.E.2d at 1024. However, if the statement is for treatment rather than fault it may be admissible. *Id.* This court, in *Thomas v. State,* 656 N.E.2d 819, 822 (Ind.Ct.App.1995), in the wake of persuasive federal authority, allowed the admission of hearsay testimony from a doctor who said the victim identified her "significant other" as the attacker. *Nash,* 754 N.E.2d at 1024; *see also Id.* at 1025 (citing *United States v. Joe,* 8 F.3d 1488, 1494–95 (10th Cir.1993), *cert. de-*

*nied* ) (statement of rape victim to attending physician identifying her estranged husband as attacker was admissible under Federal Rule of Evidence 803(4)).

Here, part of Lobodzinski's duty was to inform R.B. of available domestic dispute resources if necessary. *See Id.* at 1025. In order to determine whether R.B. would need those resources, Lobodzinski had to know the nature of her assault and the relationship of her attacker. *Id.* Beyond that, R.B., like the victim in *Thomas,* was bitten. The *Thomas* court said that, especially in cases of a human bite, it was important for the medical providers to know the source of the injury so that appropriate treatment could be provided. *Id.* at 1024. And, like in *Thomas,* "we determined that the victim's statement with regard to the cause of her injuries was made for the purpose of diagnosing and treating her injuries pursuant to [Indiana Evidence Rule] 803(4)." *Id.* at 1024.

Thus, we find that the remainder of Lobodzinski's hearsay testimony was admissible under Indiana Evidence Rule 803(4).

## II. Juror Misconduct

Dowell next contends that the trial court abused its discretion in denying his motion to set aside the verdict based on a juror's affidavit stating that the jury had discussed and considered Dowell's failure to testify due to a prior criminal offense. The State maintains that Dowell's motion was an impermissible attempt to impeach the jury's verdict.

■ "A defendant seeking a new trial because of juror misconduct must show that the misconduct (1) was gross and (2) probably harmed the defendant."

sonnel are admissible under Indiana Evidence Rule 803(4) only where shown to be *medically* relevant. *Legal* relevance is not sufficient; nor is the mere presence of the statement in the medical record.

*Griffin v. State*, 754 N.E.2d 899, 902–03 (Ind.2001) (citing *Lopez v. State*, 527 N.E.2d 1119, 1130 (Ind.1988)). We review the trial court's determination for abuse of discretion, with the burden on the appellant to show the existence of misconduct, and that it meets the prerequisites for a new trial. *Id.* (citing *Mitchell v. State*, 726 N.E.2d 1228, 1238 (Ind.2000)).

 Indiana Evidence Rule 606(b) states:

> Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith, except that a juror may testify (1) to drug or alcohol use by any juror, (2) on the question of whether extraneous prejudicial information was improperly brought to the jury's attention or (3) whether any outside influence was improperly brought to bear upon any juror. A juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying may not be received for these purposes.

A jury's verdict, generally, may not be impeached by a juror's affidavit. *Bixler v. State*, 471 N.E.2d 1093, 1098 (Ind.1984). Under Indiana Evidence Rule 606(b), a juror may aver that extraneous information was presented to the jury, but a juror cannot aver that extraneous information had a prejudicial effect on their decision.

*Griffin*, 754 N.E.2d at 903. Policy suggests this limitation because otherwise there would be no reasonable end to litigation. *Ward v. St. Mary Med. Ctr. of Gary*, 658 N.E.2d 893, 894 (Ind.1995). Both parties to the litigation may harass jurors, and there would be unsettled results. *Id.*

 Here, the trial court properly denied Dowell's motion to reconsider the verdict. As detailed above, the jury had asked whether Dowell had a previous conviction for criminal confinement. Upon the parties' agreement, the court admonished the jury that the question was inappropriate. Although, after trial, a juror stated that the jury speculated that Dowell did not testify because he wanted to hide the fact he had previously been convicted of a similar offense, such speculation does not satisfy the requirements of Indiana Evidence Rule 606(b). In the absence of evidence satisfying the Rule's requirements, we will not invade the province of the jury and inquire into the validity of its verdict. *See Fox v. State*, 457 N.E.2d 1088, 1093–94 (Ind.1984) (must be *prima facie* showing that the jury was exposed to *extrinsic* prejudicial material).

## III. Appellate Rule 7(B) Review

Dowell asserts that his sentence should be revised based on the nature of the offense and his character.[5]

 This court may revise a sentence after careful review of the trial court's decision if it concludes that the sentence is inappropriate based on the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). Even if the trial court followed the appropriate procedure

---

5. Dowell also challenges the trial court's finding as an aggravator that the offenses are crimes of violence. Because the trial court is permitted to impose any lawful sentence "regardless of the presence or absence of aggravating circumstances and mitigating circumstances," we limit our review of Dowell's sentence to the character of the offender and the nature of the offense. *McDonald v. State*, 861 N.E.2d 1255, 1258 (Ind.Ct.App.2007), *trans. pending.*

in arriving at its sentence, this court still maintains a constitutional power to revise a sentence it finds inappropriate. *Hope v. State,* 834 N.E.2d 713, 718 (Ind.Ct.App. 2005).

 Here, the facts describing the nature of the five violent offenses speak for themselves. As for Dowell's character, he had previous convictions of battery and criminal confinement, had been arrested several times, and was on probation when these offenses were committed. Further, Dowell did not receive the maximum sentence possible. The trial court could have given him eighty-three years, but instead gave him forty-three years in the Department of Correction. Based on a review of the trial court's sentence, we do not find it inappropriate.

#### IV. Written Versus Oral Sentencing Statement

 Finally, Dowell contends that because the trial court's oral sentencing statement conflicts with its written sentencing statement, he is entitled to the more lenient sentence. Specifically, the trial court stated at the March 1, 2006 sentencing hearing that Dowell is to serve "three years on count three, *suspended,* to run consecutive...." *Tr.* at 501 (emphasis added). In its sentencing order, the trial court stated that the three years on count three were to be executed with no time suspended. *Appellant's App.* at 217.

Dowell directs us to Indiana caselaw where courts on appeal have found that the trial court's oral sentencing statement controls over the written judgment order. *Whatley v. State,* 685 N.E.2d 48, 50 (Ind. 1997); *Marshall v. State,* 621 N.E.2d 308 (Ind.1993). In *Marshall,* our Supreme Court was persuaded by the State's argument that the transcript of the sentencing hearing takes precedence over the judgment order. *Marshall,* 621 N.E.2d at 323 (citing *United States v. Roberts,* 933 F.2d

517 (7th Cir.1991) and *United States v. Villano,* 816 F.2d 1448 (10th Cir.1987)).

Here, we find that the oral sentencing statement takes precedent. However, a part of the oral sentencing order was the trial court's response to defense's question to clarify to the total executed sentence. In response, the trial court said, "the Pre–Sentence Investigation sets those out in the back on page...." *Tr.* at 502. The pre-sentence investigation report detailed that count three should be served with no time suspended. *Appellant's App.* at 192. Since, the trial court's intent was to adhere to the pre-sentence investigation report's recommendation on sentencing, we find that Dowell was ordered to execute the three years he received for criminal confinement.

Affirmed.

RILEY, J., and FRIEDLANDER, J., concur.