**Regunal DOWELL, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 32A01–0810–PC–508.

Court of Appeals of Indiana.

June 30, 2009.

Regunal Dowell, Carlisle, IN, Appellant Pro Se.

Gregory F. Zoeller, Attorney General of Indiana, Ann L. Goodwin, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

VAIDIK, Judge.

### Case Summary

Regunal Dowell was convicted in 2006 of three counts of rape, one count of criminal deviate conduct, and one count of confinement. After his convictions and sentence were affirmed on direct appeal, Dowell, *pro se*, petitioned for post-conviction relief. The trial court denied his petition, and Dowell filed a motion to correct error. After the trial court denied the motion to correct error, Dowell, still *pro se*, filed a notice of appeal. On appeal, he argues that the post-conviction court erred by denying his motion to correct error because the court should have found that he was entitled to a hearing on his post-conviction petition. The State cross-appeals, arguing that Dowell's appeal must be dismissed because he failed to timely file his underlying motion to correct error, thereby depriving this Court of jurisdiction to entertain his appeal. Concluding that the prison mailbox rule applies, we determine that Dowell timely filed his motion to correct error. We also conclude that the post-conviction court did not err by denying Dowell's petition for post-conviction relief without an evidentiary hearing. We affirm.

### Facts and Procedural History

We recited the facts underlying Dowell's convictions in our opinion regarding his direct appeal:

> In September 2005, R.B. began dating Dowell. They became intimate and had sexual relations nearly every day up until mid October. Their relationship became more infrequent when R.B. moved and took on family obligations.
>
> On October 19, 2005, R.B. went to Dowell's home after work. The two left for a pub when Dowell began smoking marijuana, which R.B. did not like. R.B. told Dowell that she wanted to discontinue the relationship because he would not stop using marijuana but that they could remain friends. Dowell did not take R.B. seriously.
>
> At the pub, Dowell asked R.B. if they could still have sex. R.B. clearly indicated no. They spent nearly two and a half hours at the pub. Dowell drank several beverages while R.B. had three during that time, two of which Dowell helped finish. They both left the pub

with Dowell driving. R.B. testified that she felt fine for the first ten minutes of the ride, but then suddenly felt nauseated and began to vomit, a feeling she said she had never experienced before while drinking.

When they arrived at Dowell's residence Dowell ordered R.B. out of his car. R.B. complied and then tried to remain outside, but Dowell dragged her into his garage by her hair. R.B. began to vomit again into a trashcan in the garage. While R.B. leaned over the trashcan, Dowell came from behind her and reached around her to pull down her pants and underwear. R.B. resisted, but Dowell raped her. As R.B. struggled more, Dowell grabbed her neck and hair and dragged her into the house. Dowell pushed R.B. into a bathroom where she continued to vomit. He again raped her. When he could not maintain an erection, he digitally penetrated R.B.'s vagina while she begged him to stop.

Dowell struck R.B. several times in the head yet she still continued her attempt to flee. Eventually, R.B. lost consciousness and later awoke in Dowell's upstairs bedroom. She crawled to the bathroom to vomit more. Dowell yelled at her about their relationship and raped and digitally penetrated her again. R.B. continued to beg him to stop, but Dowell pulled her hair back straining her neck and then digitally penetrated her anus. Then, Dowell raped R.B. again. He strangled R.B. until she lost consciousness. When she awoke she was able momentarily to force Dowell out of the bathroom where she locked herself in. Dowell removed the door handle and dragged R.B. into the bedroom. They

struggled on the bed and then fell on the floor with Dowell falling on top of R.B. R.B. testified that she lost her memory at that point until she woke up in his bed the next morning. She immediately fled and went home to call the police.

*Dowell v. State*, 865 N.E.2d 1059, 1062–63 (Ind.Ct.App.2007), *vacated in part and summarily aff'd in part*, 873 N.E.2d 59 (Ind.2007). As a result of these offenses, Dowell was charged with and convicted of three counts of rape, one count of criminal confinement, and one count of criminal deviate conduct. On direct appeal, Dowell raised several challenges to his convictions and sentence. His convictions and sentence were affirmed. *Id.*

Dowell filed a *pro se* petition for post-conviction relief in 2007. In his petition, Dowell argued that he received ineffective assistance of trial counsel because counsel failed to challenge his three rape charges and subsequent convictions on double jeopardy grounds and that he received ineffective assistance of appellate counsel because counsel failed to raise this issue on direct appeal. Appellant's App. p. 25–36. The post-conviction court held a hearing on Dowell's petition on April 9, 2008. *Id.* at 38–42. During this hearing, Dowell informed the court that he did not have a copy of his trial transcript and wished to amend his petition after receiving the transcript. *Id.* at 40–41. The post-conviction court asked Dowell how long it would take him to amend his petition once he received the transcript, and Dowell responded, "30 to 45 days maximum." *Id.* at 41. Accordingly, the post-conviction court ordered that Dowell had until May 23, 2008, to amend his petition or request more time. *Id.* at 42.[1]

---

1. We observe that Dowell asks us in his appellate brief to request the transcript from his April 9, 2008, hearing and order the trial

court to send a copy of the transcript to him. Appellant's Br. p. 3–4. This request makes no sense because Dowell himself provided a copy

Dowell received a copy of his trial transcript on April 25, 2008. *Id.* at 12. However, he chose not to amend his petition for post-conviction relief. Appellant's Br. p. 5. On July 7, 2008, the post-conviction court denied Dowell's petition for post conviction relief without a hearing. Appellant's App. p. 3. Thirty days later, on August 6, 2008, Dowell placed a motion to correct error in the prison mail system. *Id.* at 16. Two days later, on August 8, the motion to correct error was file-stamped by the Clerk of the Hendricks County Courts. *Id.* at 3, 11. The post-conviction court denied the motion. *Id.* at 6. Dowell now appeals *pro se.*

### Discussion and Decision

Dowell, *pro se,* appeals from the denial of his motion to correct error, which he filed following the denial of his petition for post-conviction relief. The State cross-appeals, arguing that this Court lacks jurisdiction to entertain the merits of Dowell's appeal because Dowell failed to timely file his motion to correct error. Because jurisdiction is a threshold issue, we address the State's claim first.

### I. Jurisdiction

 The State argues that this appeal should be dismissed for lack of jurisdiction because Dowell failed to timely file a motion to correct error or a notice of appeal after the trial court issued its order denying his petition for post-conviction relief. A party only has thirty days after the entry of a final judgment to either file a motion to correct error or file a notice of appeal. Ind. Trial Rule 59(C) (A motion to correct error "shall be filed not later than thirty (30) days after the entry of a final judgment or an appealable final order"); Ind. Appellate Rule 9(A)(1) ("A party initiates an appeal by filing a Notice of Appeal with the trial court clerk within thirty (30) days after the entry of a Final Judgment. However, if any party files a timely motion to correct error, a notice of appeal must be filed within thirty (30) days after the court's ruling on such motion, or thirty (30) days after the motion is deemed denied under Trial Rule 53.3, whichever occurs first."). After the trial court denied Dowell's petition for post-conviction relief, Dowell opted to file a motion to correct error rather than immediately appeal the trial court's ruling. Unless a motion to correct error is timely filed or permission to file a belated motion to correct error has been sought and granted pursuant to Indiana Post–Conviction Rule 2, we must dismiss the appeal. *Goodman v. State,* 581 N.E.2d 1259, 1260 (Ind.Ct.App.1991).

Here, the post-conviction court denied Dowell's petition for post-conviction relief on July 7, 2008. Appellant's App. p. 3. Thus, he had until August 6, 2008, to either file a notice of appeal or a motion to correct error. *See* Ind. Appellate Rule 25(B); Ind. Trial Rule 6(A). The State contends that Dowell neither filed a notice of appeal nor a motion to correct error within thirty days of this final order and that, instead, thirty-two days after the judgment Dowell filed his motion to correct error.

 We must disagree. Dowell's motion to correct error, filed while he was incarcerated, implicates the "prison mail-

of the April 9, 2008, transcript to this Court in his Appellant's Appendix, filed the same day as his appellate brief. Appellant's App. p. 38–42. He further makes the unsupported claim in his appellate brief that the trial court did not give him until May 23, 2008, to amend his petition. Appellant's Br. p. 4. This claim is blatantly false because the transcript, *which Dowell provided to us,* reflects that the trial court did give him until May 23, 2008, to amend his petition or request more time to do so. Appellant's App. p. 12. Dowell's lack of candor is not appreciated.

box rule." Under the "prison mailbox rule," recognized by the United States Supreme Court in *Houston v. Lack*, pro se filings from an incarcerated litigant are deemed filed when they are delivered to prison officials for mailing. *McGill v. Ind. Dep't of Corr.*, 636 N.E.2d 199, 202 (Ind.Ct. App.1994) (citing *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988)), *reh'g denied*. Although *Houston* discusses filings by federal prisoners, it compellingly articulates the reason for deeming a prisoner's *pro se* court filings "filed" upon delivery to a prison's mail system:

> Unlike other litigants, *pro se* prisoners cannot personally travel to the courthouse to see that the notice is stamped "filed" or to establish the date on which the court received the notice. Other litigants may choose to entrust their appeals to the vagaries of the mail and the clerk's process for stamping incoming papers, but only the *pro se* prisoner is forced to do so by his situation. And if other litigants do choose to use the mail, they can at least place the notice directly into the hands of the United States Postal Service (or a private express carrier); and they can follow its progress by calling the court to determine whether the notice has been received and stamped, knowing that if the mail goes awry they can personally deliver notice at the last moment or that their monitoring will provide them with evidence to demonstrate either excusable neglect or that the notice was not stamped on the date the court received it. *Pro se* prisoners cannot take any of these precautions; nor, by definition, do they have lawyers who can take these precautions for them. Worse, the *pro se* prisoner

has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay. No matter how far in advance the pro se prisoner delivers his notice to the prison authorities, he can never be sure that it will ultimately get stamped "filed" on time. And if there is a delay the prisoner suspects is attributable to the prison authorities, he is unlikely to have any means of proving it, for his confinement prevents him from monitoring the process sufficiently to distinguish delay on the part of prison authorities from slow mail service or the court clerk's failure to stamp the notice on the date received. Unskilled in law, unaided by counsel, and unable to leave the prison, his control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access— the prison authorities—and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice.

*Houston*, 487 U.S. at 271–72, 108 S.Ct. 2379. Although our research has revealed a lack of published authority in Indiana expressly applying the prison mailbox rule, it has been the practice of the Indiana appellate courts to apply the prison mailbox rule in unpublished orders and memorandum decisions.[2] Further, even before *Houston*, another panel of this Court examined then-Indiana Rule of Trial Procedure 5(E)(2) (now Indiana Rule of Trial Procedure 5(F)(3)) and held,

> Since [the *pro se* prisoner litigant] was unable due to his incarceration to personally take his motion to correct errors

---

**2.** We do not mean to indicate with this observation that it is permissible to cite unpublished cases or orders as authority.

to a post office, he 'deposited' his motion in the institutional mail pouch in the Westville Correctional Center's law library on February 8, 1985. This deposit conformed with the requirements of T.R. 5(E)(2) as construed by this Court in *Seastrom* [*Inc. v. Amick Constr. Co., Inc.*, 159 Ind.App. 266, 306 N.E.2d 125, 127 (1974) ] because Baker, as best as he was able, mailed his motion four days prior to the filing deadline. The denial of Baker's motion to correct errors because it was postmarked late due to no fault of his own is inconsistent with the Seventh Circuit's holding in *Childs v. Duckworth* (7th Cir.1983), 705 F.2d 915, 922, that it is the duty of the trial court to insure that the claims of a pro se litigant are given a fair and meaningful consideration. The denial of Baker's motion to correct errors here was also contrary to this Court's policy of preferring to decide cases on their merits rather than dismiss them because of harmless timing failures. *See, Sekerez v. Gehring* (1981), Ind.App., 419 N.E.2d 1004, 1008. Because his motion was put in the mail prior to the filing deadline, Baker's motion to correct errors was erroneously denied by the trial court. *Baker v. State*, 505 N.E.2d 498, 499–500 (Ind.Ct.App.1987). Given this authority and our agreement with the rationale of *Houston*, we now expressly hold that the prison mailbox rule is applicable to state post-conviction matters. Thus, because Dowell has provided evidence that he delivered his motion to correct error to prison officials within thirty days of the date of the post-conviction court's final judgment, his motion was timely filed. *See* Appellant's App. p. 16 (verified affidavit from fellow inmate, who serves as a volunteer in the prison law library, providing that Dowell's motion to correct error "was completed [A]ugust 6, 2008 and placed in the prison legal mail system which is to hand documents to the prison counselor"). After the post-conviction court denied the motion to correct error, Dowell timely filed his notice of appeal. We have jurisdiction over this appeal, and we now proceed to the merits of Dowell's claim.

## II. Motion to Correct Error

■ Dowell argues on appeal that the post-conviction court erred by denying his motion to correct error. When ruling on a motion to correct error, the post-conviction court sits as the fact finder on the issues raised, and we review the post-conviction court's determination for an abuse of discretion. *Booher v. State*, 773 N.E.2d 814, 817 (Ind.2002).

Here, Dowell filed his motion to correct error following the denial of his petition for post-conviction relief. In his petition for post-conviction relief, Dowell argued that he received ineffective assistance of trial counsel because counsel failed to challenge his three rape charges and subsequent convictions on double jeopardy grounds and that he received ineffective assistance of appellate counsel because counsel failed to raise this issue on direct appeal. Appellant's App. p. 25–36. The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post–Conviction Rule 1(5). The post-conviction court is the sole judge of the evidence and the credibility of witnesses. *Hall v. State*, 849 N.E.2d 466, 468 (Ind.2006). When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind.2004). The reviewing court will not reverse the judgment unless the evidence unerringly and unmistakably leads to the opposite conclusion. *Patton v. State*, 810 N.E.2d 690, 697 (Ind.2004). We will reverse a post-conviction court's find-

ings and judgment only upon a showing of clear error, which is that which leaves us with a definite and firm conviction that a mistake has been made. *Hall,* 849 N.E.2d at 468.

The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to effective assistance of counsel. *Koons v. State,* 771 N.E.2d 685, 690 (Ind.Ct.App.2002), *trans. denied.* We review the effectiveness of trial and appellate counsel under the two-part test provided by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Bieghler v. State,* 690 N.E.2d 188, 192–93 (Ind.1997). To succeed on his ineffective assistance of counsel claims, Dowell must demonstrate that counsel's performance fell below an objective level of reasonableness based upon prevailing professional norms and that the deficient performance resulted in prejudice. *Strickland,* 466 U.S. at 687–88, 104 S.Ct. 2052. "Prejudice occurs when the defendant demonstrates that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Grinstead v. State,* 845 N.E.2d 1027, 1031 (Ind.2006) (quoting *Strickland,* 466 U.S. at 694, 104 S.Ct. 2052).

▆▆▆ Dowell's entire argument on appeal is premised upon his contention that he had an absolute right to an evidentiary hearing before the post-conviction court denied his petition for post-conviction relief. However, pursuant to Indiana Post-Conviction Rule l(4)(f), "[i]f the pleadings conclusively show that [the] petitioner is entitled to no relief, the court may deny the [post-conviction] petition without further proceedings." If a petition for post-conviction relief "alleges only errors of law, then the court may determine without a hearing whether the petitioner is entitled to relief on those questions." *Allen v. State,* 791 N.E.2d 748, 753 (Ind.Ct.App. 2003), *trans. denied.*

▆▆▆ Our review of Dowell's petition for post-conviction relief reveals that his only arguments relate to whether his three rape convictions constitute double jeopardy. Appellant's App. p. 28–31. Whether convictions are barred by double jeopardy is a question of law. *See McElroy v. State,* 864 N.E.2d 392, 396 (Ind.Ct.App.2007), *trans. denied.* Thus, the post-conviction court was free to deny Dowell's petition without a hearing if the pleadings conclusively showed that he was not entitled to relief. In his petition, Dowell argued that his three rape convictions violate the "same elements" test as set forth in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and that trial and appellate counsel were ineffective for failing to previously raise this issue. The basis for his claim is his apparent mistaken belief that his three rape convictions are for the "same offense." Appellant's App. p. 28. However, a review of the three rape charges brought against Dowell reflects that each related to a *different sexual assault.* One related to the rape of R.B. in the "garage area of [Dowell's] residence," one related to the rape of R.B. in "the downstairs of the residence," and one related to the rape of R.B. in "the upstairs master bedroom area of the residence." Tr. p. 117, 118, 119.[3] As the State points out in its brief, "when separate and distinct offenses occur, even when they are similar acts done many times to the same victim, they are chargeable individually as separate and distinct criminal conduct" and convictions for the offenses do not constitute double jeopardy.

---

**3.** A copy of Dowell's trial transcript is included in the record and is marked as an exhibit from the April 9, 2008, post-conviction hearing. "Tr." refers to that transcript.

Appellee's Br. p. 10; *Brown v. State*, 459 N.E.2d 376, 378 (Ind.1984). Thus, trial counsel did not render deficient performance by failing to object to the rape charges on double jeopardy grounds or by failing to seek to correct error on double jeopardy grounds after the judgments of conviction were entered. Further, appellate counsel did not render deficient performance for failing to raise this meritless claim on direct appeal. The post-conviction court could readily discern that Dowell was entitled to no relief on his claims of ineffective assistance of counsel and therefore did not err by denying his petition for post-conviction relief without an evidentiary hearing. Therefore, the post-conviction court did not abuse its discretion by denying Dowell's motion to correct error.

Affirmed.

NAJAM, J., and FRIEDLANDER, J., concur.