STATE of Indiana, Appellant,

v.

Andy J. VELASQUEZ, II, Appellee.

No. 53A05–1003–CR–194.

Court of Appeals of Indiana.

Feb. 22, 2011.

Transfer Granted May 13, 2011.

ney General, Indianapolis, IN, Attorneys for Appellant.

F. Thomas Schornhorst, Special Deputy Public Defender for Monroe County, IN, Oxford, MS, Attorney for Appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

The State appeals a reserved question of law following a jury's acquittal of Andy J. Velasquez, II for child molesting as a class A felony and child molesting as a class C felony.[1]

We affirm in part and reverse in part.

### ISSUES

1. Whether the trial court abused its discretion in instructing the jury.

2. Whether the trial court abused its discretion in excluding evidence.

### FACTS

G.S. was born in January of 2000. When G.S. was in the second grade, she resided in Bloomington with her mother ("Mother"), brother, and Velasquez, her stepfather. Velasquez cared for G.S. while Mother was at work. Velasquez often punished G.S. by sending her to her room or "beat[ing] [her] with a stick" on her buttocks. (Tr. 153).

On June 15, 2008, Velasquez sent G.S. to her room. Shortly thereafter, G.S. asked to use the bathroom. After she finished, G.S. told Mother "she had a secret...." (Tr. 258). G.S. informed Mother that "[h]er butt" hurt and alleged that Velasquez had molested her. (Tr. 259).

That same afternoon, Mother and Velasquez took G.S. to the emergency room at

Gregory F. Zoeller, Attorney General of Indiana, Joby D. Jerrells, Deputy Attor-

---

1. Ind.Code § 35–42–4–3.

Bloomington Hospital. Doctors did not observe any physical signs of abuse. On their recommendation, Mother admitted G.S. to Meadows Hospital for a psychological assessment and treatment the next day. Meadows Hospital discharged G.S. on June 24, 2008.

On June 30, 2008, the Monroe County Department of Child Services ("DCS") removed G.S. and her brother from Mother's care and placed them with Mother's parents. Judy Kline, a clinical social worker specializing in "sexual abuse and domestic violence," (tr. 175), met with G.S. at the grandparents' home "[t]o counsel her, to get to know her, to make an assessment . . . and to deal with whatever issues she was dealing with." (Tr. 178). Kline informed G.S. of her purpose, namely, to "help [G.S.] to just work through whatever" she "need[ed] to work through." (Tr. 178).

Dr. Jennifer Spencer, a psychologist, met with G.S. four times over a period of four months during the summer and fall of 2008 for the purpose of "generat[ing] a mental health diagnosis and the treatment recommendations." (Tr. 217). Dr. Spencer also reviewed G.S.'s medical and school records. In addition, she interviewed G.S.'s former and current therapist and met with G.S.'s grandparents; Mother, however, refused to meet with Dr. Spencer.

After reviewing G.S.'s medical records, Dr. Spencer learned that G.S. previously had been diagnosed with bi-polar disorder, "post-traumatic stress, oppositional defiant disorder, [and] attention deficit disorder. . . ." (Tr. 221). Mother also had expressed concern that G.S. had "Asperser's [sic] disorder, which is an autism spectrum issue." (Tr. 222).

On December 15, 2008, the State charged Velasquez with class C felony child molesting under Cause Number 53C09–0812–DC–1072. On July 2, 2009, pursuant to Indiana Code section 35–37–4–6, the State filed a notice of intent to introduce statements made by G.S. to DCS case manager Larry Brown, Kline, and Dr. Spencer. Following a hearing, the trial court found G.S.'s statements to be inadmissible.

On August 20, 2009, the State charged Velasquez with class A felony child molesting under Cause Number 53C09–0908–FA–696. On October 23, 2009, the trial court granted the State's motion for joinder.

On January 28, 2010, and February 2, 2010, the State filed notices of intent to introduce evidence pursuant to Indiana Evidence Rule 404(b) that Velasquez "disciplined [G.S.] by striking her with a stick"; made threats to Mother; and made threats to G.S. (App.19). The trial court held a hearing on the State's notices on February 4, 2010, after which it ruled the evidence admissible.

The trial court commenced a three-day jury trial on February 16, 2010. Prior to the presentation of evidence, the trial court gave the following preliminary instruction as an admonishment to the jury:

> Evidence may be presented to you of incidents unrelated to the offenses charged. These incidents are only to be considered as they describe the relationship between G.[S]., and [Velasquez]. You may not consider it for any other reason. Specifically, you may not consider it as being evidence of [Velasquez]'s character, nor may it be considered as evidence that [Velasquez] acted in conformity with the acts charged.

(Tr. 140; App. 36).

During the trial, G.S. testified that Velasquez would "beat [her] with a stick" on her "butt" as punishment. (Tr. 153, 155).

She also testified that Velasquez would "put his crotch in [her] butt." (Tr. 156).

Kline and Dr. Spencer also testified during the trial. Velasquez's counsel objected, arguing that the testimony constituted vouching testimony. The trial court sustained the objections. The trial court also excluded testimony of G.S.'s grandmother, P.S.

On February 18, 2010, the State filed a motion to reconsider its ruling on Dr. Spencer's testimony and made an offer of proof. The trial court denied the motion. The jury found Velasquez not guilty on all charges.

Additional facts will be provided as necessary.

### DECISION

■ Indiana Code section 35-38-4-2 provides that an appeal may be taken by the State to the Court of Appeals "[u]pon a question reserved by the state, if the defendant is acquitted." When the defendant has been acquitted and the State appeals a reserved question of law, only questions of law are considered by this court. *State v. Hunter*, 898 N.E.2d 455, 457–58 (Ind.Ct.App.2008). Although the issue addressed is moot, the purpose of the appeal is to provide guidance to the trial court in future cases. *Id.*

### 1. *Preliminary Instruction*

■ The State asserts that the trial court "abused its discretion by giving a preliminary character evidence instruction before the jury heard any evidence." State's Br. at 9. The State also asserts that the preliminary instruction "was confusing and misled the jury." *Id.* at 12.

"The purpose of an instruction is to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and arrive at a just, fair, and correct verdict." "Instruction of the jury is generally within the discretion of the trial court and is reviewed only for an abuse of that discretion." "In reviewing a trial court's decision to give or refuse tendered jury instructions," this Court "considers: (1) whether the instruction correctly states the law; (2) whether there is evidence in the record to support the giving of the instruction; and (3) whether the substance of the tendered instruction is covered by other instructions which are given."

*Gravens v. State,* 836 N.E.2d 490, 493 (Ind. Ct.App.2005) (internal citations omitted), *trans. denied.*

#### a. *Premature preliminary instruction*

The State argues that the trial court improperly instructed the jury on character evidence because it did so "before the State ever offered any character evidence, or even gave an opening statement...." State's Br. at 9-10. Citing to Evidence Rule 105, the State maintains that the trial court should have admonished the jury on character evidence at the time the State sought to admit such evidence, if any.

Generally, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Ind. Evidence Rule 404(b). Such evidence, however, may "be admissible for other purposes...." *Id.*

> When evidence which is admissible ... for one purpose but not admissible ... for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and admonish the jury accordingly.

Evid. R. 105. Although Evidence Rule 105 provides that the trial court shall admonish the jury "upon request," it "does not preclude trial courts from giving a limiting

admonition or instruction sua sponte as a matter of discretion[.]" *Humphrey v. State,* 680 N.E.2d 836, 839 (Ind.1997).

■ In this case, the State argues that Evidence Rule 105 allows for a limiting instruction or admonishment *only* at the time the evidence is offered and admitted. Where a trial court's evidentiary ruling involves the interpretation of a rule of evidence, we apply a de novo standard of review. *Tyler v. State,* 903 N.E.2d 463, 467 n. 4 (Ind.2009).

■ We do not read Evidence Rule 105 as allowing an admonishment or limiting instruction only at the time evidence is offered. Instead, the purpose of the rule is "to enable a party to request a limiting admonishment at the time the evidence is offered, rather than waiting until the jury instructions." *Humphrey,* 680 N.E.2d at 839 n. 7 (citing 12 ROBERT L. MILLER, JR., INDIANA PRACTICE § 105.104 (3rd ed. 2007) (Evidence Rule 105 "requires the trial court . . . to inform the jury of the limited use to which evidence may be put at the time the evidence is offered, rather than waiting until the end of trial.")). Thus, a party may seek a limiting instruction or admonishment either prior to trial or at the time evidence is admitted. *See id.*

In this case, Velasquez's counsel sought a limiting instruction prior to the presentation of evidence. While the more common practice may have been to admonish the jury at the time the character evidence was offered, and a limiting instruction is "usually" given after the presentation of evidence, *see id.,* we cannot say that the trial court in this case abused its discretion in giving a preliminary limiting instruction.

The State had filed notices of intent to introduce evidence pursuant to Indiana Evidence Rule 404(b) and admittedly "did present evidence that Velasquez had used a stick to punish G.S. . . . ." State's Br. at 12. Thus, it was not ultimately speculative for the trial court to give a limiting instruction or admonishment prior to the presentation of evidence. *See Thakkar v. State,* 613 N.E.2d 453, 460 (Ind.Ct.App. 1993) (finding no error in giving preliminary instruction on circumstantial evidence where the trial court admitted circumstantial evidence at trial).

The State, however, also argues that the preliminary instruction "was confusing and misled the jury" because it "permitt[ed] the jurors to conclude that *any* evidence offered by the State was character evidence that could not be considered as proof of Velasquez's guilt." State's Br. at 12. We cannot agree.

Again, the trial court instructed the jury as follows:

> Evidence may be presented to you of incidents *unrelated to the offenses charged.* These incidents are only to be considered as they describe the relationship between G.[S]., and [Velasquez]. You may not consider it for any other reason. Specifically, you may not consider it as being evidence of [Velasquez]'s character, nor may it be considered as evidence that [Velasquez] acted in conformity with the acts charged.

(Tr. 140; App. 36) (emphasis added). The State's argument that the instruction "gave the jury an option to consider all of the State's evidence as merely establishing the relationship between Velasquez and G.S.", State's reply br. at 5, "ignores the presumption that jurors are presumed to follow the instructions of the trial court." *See Buckner v. State,* 857 N.E.2d 1011, 1016 (Ind.Ct.App.2006). Accordingly, we decline to reverse the trial court's giving of the limiting instruction prior to the presen-

tation of evidence.[2]

## 2. *Exclusion of Evidence*

■ The State also asserts that the trial court abused its discretion in excluding the testimony of Kline, Dr. Spencer, and G.S.'s grandmother, P.S. Specifically, the State argues that the trial court 1) improperly found that Kline's testimony did not meet the hearsay exception under Evidence Rule 803(4); 2) abused its discretion in finding that the State had qualified Kline as an expert witness, thereby limiting Kline's testimony as a social worker; and 3) improperly excluded testimony under Evidence Rule 704(b).

> [T]he admission or exclusion of evidence is within the sound discretion of the trial court, and we will reverse the trial court's determination only for an abuse of that discretion. An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the trial court. In reviewing the admissibility of evidence, we consider only the evidence in favor of the trial court's ruling and any unrefuted evidence in the appellant's favor. As a rule, errors in the admission or exclusion of evidence are to be disregarded as harmless unless they affect the substantial rights of a party. In determining whether an evidentiary ruling affected a party's substantial rights, we assess the probable impact of the evidence on the trier of fact.

*Redding v. State,* 844 N.E.2d 1067, 1069 (Ind.Ct.App.2006) (internal citations omitted), *reh'g denied.*

### a. *Hearsay exception pursuant to Evidence Rule 803(4)*

■ The State argues that the trial court improperly found that Kline's testimony did not meet the hearsay exception under Evidence Rule 803(4). Generally, hearsay evidence is inadmissible pursuant to Evidence Rule 802. However, an exception to the hearsay rule applies to

> [s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Evid. R. 803(4).

Hearsay is admitted under this exception because the reliability of the out-of-court statement is assured based upon the belief that a declarant's self-interest in seeking medical treatment renders it unlikely the declarant will mislead the person that she wants to treat her. *Nash v. State,* 754 N.E.2d 1021, 1023 (Ind.Ct.App. 2001). If the declarant's statements are made to advance a medical diagnosis or treatment, Evidence Rule 803(4) encompasses statements made to non-physicians, including clinical social workers. *See In re Paternity of H.R.M.,* 864 N.E.2d 442, 446 (Ind.Ct.App.2007) (finding that the rule applied to statements made to a clinical social worker specializing in working with abused children).

■ Generally, "statements attributing fault or identity are typically inadmissible under" Evidence Rule 803(4). *Nash,* 754 N.E.2d at 1025. In *Nash,* however, this court determined that in cases "where in-

---

**2.** We note that the State does not assert that *final* limiting instructions are confusing and misleading because such instructions are not given at the time evidence is admitted. If, however, we were to accept the State's argument that an admonishment must be issued only *at the time the evidence is admitted, see* State's br. at 11, we effectively would be prohibiting limiting instructions at the close of evidence as well.

jury occurs as the result of domestic violence, which may alter the course of diagnosis and treatment, trial courts may properly exercise their discretion in admitting statements regarding identity of the perpetrator." *Id.* In so determining, the *Nash*-court looked to other jurisdictions in which courts had admitted statements of children identifying an individual as the perpetrator of the offense. Those jurisdictions have held that "the identity of the child abuser is not only pertinent to treating the child's emotional and psychological injuries, but also necessary to prevent a child from being returned to an abusive environment." 754 N.E.2d at 1025 (citing *United States v. Renville*, 779 F.2d 430, 437–38 (8th Cir.1985)).

The underlying rationale for this hearsay exception requires a two-step analysis for evaluating whether a statement is properly admitted pursuant to Evid. R. 803(4): (1) whether the declarant is motivated to provide truthful information in order to promote diagnosis and treatment; and (2) whether the content of the statement is such that an expert in the field would reasonably rely upon it in rendering diagnosis or treatment.

*Nash,* 754 N.E.2d at 1024.

In this case, Velasquez objected when the State asked Kline, "What, if anything, did [G.S.] say to you about not wanting to see [Velasquez?]" (Tr. 179). The State therefore made an offer of proof, during which Kline stated that she "didn't diagnose" G.S. and that it was for a psychiatrist to determine whether G.S. had falsely accused Velasquez. (Tr. 187). Kline further testified that her "job as a clinical social worker is not whether [she] believe[s] [G.S.] or not, it's to help her work through the issues that she's dealing with." (Tr. 182–83).

The trial court sustained Velasquez's objection, stating:

[G.S.] may have been motivated indeed to provide truthful information to promote diagnosis and treatment. At the same time, I am concerned that it doesn't fit, [sic] expert in the field would reasonably rely on it in rendering diagnosis and treatment. I believe that that runs into relying upon something that was not assessed by this witness.

(Tr. 192).

Subsequently, the trial court explained its ruling as follows:

Indeed testimony may be admissible *if it* meets the two parts [sic] test that first of all, the person being treated knew that they were seeking treatment and indeed that predicate was met.... But the second prong of that test is that the statement was made in furtherance of diagnosis or treatment and Ms. Kline specifically said that she does not make diagnosis. That she leaves that to the psychologist. ...[O]nce again, I find that that exception to the hearsay rule is not applicable to the testimony in front of us because the predicate was not met and prong two, that it is ... necessary for both the treatment and also ... for the diagnosis. It is an ["]and.["] It is not an ["]and or["] or ["]or.["] It is an ["]and["] and therefore, it is not admissible.

(Tr. 246).

Although the States presents an extensive argument regarding whether the State satisfied the first part of the two-part test for determining the admissibility of statements under Evidence Rule 803(4), we need not address that issue as the trial court found that the State had met this requirement. Thus, we need only determine whether the trial court properly found that the State failed to meet the second requirement for the admission of statements under Evidence Rule 803(4);

namely, whether an expert in the field would reasonably rely upon G.S.'s statements to Kline in rendering diagnosis or treatment. *See Nash,* 754 N.E.2d at 1024.

We cannot say that in order for statements to be admissible under Evidence Rule 803(4), they must be in furtherance of diagnosis *and* treatment. Rather, case law states that the statements must be relied upon either to render a diagnosis *or* provide treatment. *See Nash,* 754 N.E.2d at 1024 (stating that the content of the statement must be "such that an expert in the field would reasonably rely upon it in rendering diagnosis *or* treatment" (emphasis added)).

We also cannot say that the statement must be made to the individual who ultimately will render a diagnosis or provide treatment. *See McClain v. State,* 675 N.E.2d 329, 331 (Ind.1996) (recognizing that " '[s]tatements made to hospital attendants, ambulance drivers or even family members might be included' " within the exception (quoting Fed.R.Evid. 803(4) advisory committee's note)). It is necessary only that "the statement is made to *promote* diagnosis or treatment." *Id.* (emphasis added).

Here, Kline testified that she is a clinical social worker, specializing in "sexual abuse and domestic violence." (Tr. 175). She further testified that DCS referred her to G.S. to "do an assessment and therapy...." (Tr. 175). According to Kline's testimony, the purpose of an assessment is to determine "what the family's needs are, and what kind of services they might want." (Tr. 176).

Kline's testimony clearly shows that her purpose was to provide treatment for G.S. and G.S.'s family. Thus, any statements made by G.S. to Kline, upon which Kline, or another therapist, would have reasonably relied to provide treatment, including therapy, to G.S., were admissible. We

therefore find that the trial court erred in excluding G.S.'s statements under the premise that Kline did not rely upon the statements to render a diagnosis.

b. *Qualifying witness as an expert*

■■■■ The State further argues that the trial court "abused its discretion by concluding that the State had qualified Kline, a licensed clinical social worker, as an expert witness." State's Br. at 18. The State maintains that this qualification limited Kline's testimony, contrary to Indiana Code section 25–23.6–4–6, which provides that a "social worker licensed under [Article 23.6] may provide factual testimony but may not provide expert testimony."

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Our supreme court has stated, "Under this rule, a witness may be qualified as an expert by virtue of 'knowledge, skill, experience, training, or education.' " And only one characteristic is necessary to qualify an individual as an expert. As such, a witness may qualify as an expert on the basis of practical experience alone. It is within the trial court's sound discretion to decide whether a person qualifies as an expert witness. On appeal, we will not substitute our judgment for that of the trial court.

*Burnett v. State,* 815 N.E.2d 201, 204 (Ind. Ct.App.2004) (internal citations omitted).

■■■■ To the extent the State contends that a question of law exists as to whether someone who may qualify as an expert is precluded from giving factual

testimony under Indiana Code section 25–23.6–4–6, we find in the negative. Statutory interpretation is a matter of law to be determined de novo by this court. *Pendleton v. Aguilar*, 827 N.E.2d 614, 619 (Ind. Ct.App.2005), *reh'g denied.* We shall construe and interpret a statute only if it is ambiguous. *Id.* "A statute that is clear and unambiguous must be read to mean what it plainly expresses, and its plain and obvious meaning may not be enlarged or restricted." *Indiana Mun. Power Agency v. Town of Edinburgh*, 769 N.E.2d 222, 226 (Ind.Ct.App.2002). "The words and phrases of such a statute shall be taken in their plain, ordinary, and usual sense." *Id.* Moreover, a "procedural statute may not operate as an exception to a procedural rule having general application." *In re J.H.*, 898 N.E.2d 1265, 1270 (Ind.Ct.App. 2009), *trans. denied.*

While Indiana Code section 25–23.6–4–6 prohibits a licensed clinical social worker from providing expert testimony, it does not prohibit an expert from providing factual testimony. It also cannot prohibit a licensed clinical social worker from being qualified as an expert as Evidence Rule 702(a) allows that a witness may qualify as an expert on the basis of experience alone. *See* Evid. R. 702(a); *Burnett v. State*, 815 N.E.2d 201, 204 (Ind.Ct.App.2004) ("[A] witness may qualify as an expert on the basis of practical experience alone."). Nevertheless, it does not appear from the record that this was the basis for the trial court sustaining Velasquez's objection to Kline's testimony.

### c. *Excluding testimony under Evidence Rule 704(b)*

The State contends that the trial court abused its discretion in excluding the testimony of Kline, Dr. Spencer, and G.S.'s maternal grandmother. Specifically, the State maintains that "[t]he trial court's repeated exclusions of factual and expert testimonial evidence under the 'no vouching' rule demonstrate the court's fundamental misunderstanding of the rule." State's Br. at 20.

Evidence Rule 704(b) instructs that "[w]itnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions." Thus, the State may not seek an opinion from an expert as to whether the witness is telling the truth. *Head v. State*, 519 N.E.2d 151, 153 (Ind.1988). It is permissible, however, "to receive the testimony of an expert as to whether or not the child is prone to exaggerate or fantasize and also to express an opinion as to the child's ability to accurately describe a sexual occurrence." *Id.* Additionally, "[e]xpert testimony that an individual's subsequent behavior is consistent or inconsistent with that observed from other victims is a type of evidence which is admissible." [3] *Stout v. State*, 612 N.E.2d 1076, 1080 (Ind.Ct.App.1993).

---

3. We note that the case on which *Stout* relies for this proposition, *Henson v. State*, 535 N.E.2d 1189, 1192 (Ind.1989), addressed the admissibility of "rape trauma syndrome" evidence. We would also note, however, that the Indiana Supreme Court later issued *Steward v. State*, 652 N.E.2d 490, 498–99 (Ind. 1995), in which the Indiana Supreme Court addressed the question of admissibility of evidence of Child Sexual Abuse Accommodation Syndrome ("CSAAS"), which deals with be- haviors typical of child molesting victims. *Id.* at 499. The *Steward* Court held that CSAAS evidence could not be used to show that child abuse occurred, noting that "the reliability of such evidence for the purpose of proving abuse is at present extremely doubtful and the subject of substantial and widespread repudiation by courts and scientists." *Id.* The question of whether *Steward's* holding would apply to behavioral evidence without use of the term CSAAS has apparently not been ad-

### i. *Kline's testimony*

The State argues that the trial court improperly excluded Kline's testimony under Evidence Rule 704(b) when the State attempted to elicit an answer to the question, "What, if anything, did [G.S.] say to you about not wanting to see [Velasquez?]" (Tr. 179). We disagree.

Velasquez initially objected to Kline's testimony as hearsay. He subsequently changed his objection to one based on vouching testimony when the State sought to admit the testimony under Evidence Rule 803(4). The trial court sustained the objection under Evidence Rule 803(4), not under Evidence Rule 704(b). We therefore cannot say that the trial court improperly excluded Kline's testimony as vouching.

We note, however, that the trial court subsequently excluded Kline's testimony regarding G.S.'s "demeanor when th[e] topic [of Velasquez] was raised." (Tr. 194). The record shows the following colloquy:

[State:] Without telling us what she said, describe [G.S.'s] demeanor when this topic was raised.

[Velasquez:] To which I'm going to object, it's another form of vouching.

[State]: She observed it with her own eyes and ears.

. . .

[State]: I've asked at every trial about someone's demeanor.

[Court]: Not every trial with an expert in child abuse.

[State]: I didn't ask to qualify her as an expert. . . .

[Court]: But you had her testify about all of her qualifications, what she did,

what specialized training she had received, and you put out there that what she had was specialized training in this particular area that we are now facing, and what you are doing is now asking her to describe to the jury what she saw in her professional posture.

[State]: That's not what I asked her. I could have asked the same question to any lay witness.

[Court]: That's exactly right. You could ask that question of a lay witness but I think you'll be running into vouching.

(Tr. 194–95).

Here, the record clearly shows that the State did not attempt to elicit testimony regarding whether Kline believed G.S.'s allegations to be true; rather, the State attempted to elicit testimony regarding G.S.'s behavior when discussing Velasquez. Such testimony does not amount to impermissible vouching. Therefore, we find that the trial court improperly excluded the testimony on the grounds that it constituted vouching.

### ii. *Dr. Spencer*

The State also contends that the trial court abused its discretion in limiting Dr. Spencer's testimony regarding her diagnosis of post-traumatic stress disorder ("PTSD") in G.S.

Here, Dr. Spencer testified at length regarding PTSD in children. She testified that it is "basically a severe anxiety disorder that can occur when somebody has been exposed to a very traumatic event," including, but not limited to, "a personal assault" or "child molesting[.]" (Tr. 206–07). She further testified that symptoms in children often include nightmares, hallucinations or flashbacks, temper tantrums, irritability, difficulty sleeping, and "emo-

dressed by any appellate court in Indiana. Consequently, we feel constrained to follow

*Stout* on this point.

tional numbing or detachment," where children become withdrawn. (Tr. 210). She also testified that symptoms of PTSD are similar to those for depression, bipolar disorder, attention-deficit disorder, and oppositional-defiant disorder.

The State then elicited the following testimony from Dr. Spencer:

Q. Did you review any documents or records prior to meeting with [G.S.] specific to G.S.?

A. Yes.

. . . .

Q. As you reviewed those records did you learn that [G.S.] had at one point or another been diagnosed with other mental health conditions?

A. Yes.

Q. What?

A. In the records there were bi-polar diagnosis, post-traumatic stress, oppositional defiant disorder, attention deficit disorder and there was also a notation that this wasn't from a provider, but her mother was concerned that she might have Asperser's [sic] disorder, which is an autism spectrum issue.

. . . .

Q. . . . [I]f not based on a psychological evaluation like you do, what were those diagnoses based on?

A. Most of them were based on the fact that somebody previous to them had given that diagnosis. So I followed through the records from somebody way back and said, we think she's bi-polar, and then the next person who got her said this is a pre-existing bi-polar diagnosis. The closest I can get to the original, where that original diagnosis came from, most of it was just reported by her mother. The mother said she had these symptoms. There were very few direct observations in any of the records of any of these symptoms and

were [sic] there were direct observations by the clinician of [G.S.], they all said she was cooperative and playing quietly. I didn't see any of this stuff, and I'm not convinced that [G.S.] even had a diagnosis prior to the abuse.

(Tr. 220–23). Velasquez objected, stating, "she's vouching, corroborating, I don't know what it is, so I object and move to strike." (Tr. 223).

The following colloquy then took place:

THE COURT: You know that the questioning has been to establish PTSD, which . . . vouches because it is based upon, as your witness has testified, a traumatic event. . . . I will admonish the jury. . . .

[Velasquez]: . . . One other thing that I'm concerned about and I'm objecting to, is that at some point she's going to ask what the diagnosis is, I guess I'm trying to speed this up and maybe anticipate some problems between her coming out real soon. She says the report comes from sexual abuse and we need to stay away from that and any kind of records that. . . .

THE COURT: I agree.

. . . .

[The State]: I think it's admissible to have testimony the victim's behavior is consistent with PTSD . . . .

. . . .

THE COURT: . . . The law has becoming [sic] increasingly clear on vouching evidence and that's what this is. What you are doing is that you've found a way to say to the jury that you have an expert witness that has decided that this event has occurred. I'm not going to allow it.

. . . .

[The State]: . . . So, I can't ask questions about [what] the diagnosis is?

THE COURT: No, you cannot ask questions about the diagnosis.

(Tr. 223–26). In ruling on the State's subsequent motion to reconsider and offer of proof, the trial court later clarified the ruling as follows: "the bottom line is . . . that [Dr. Spencer's] diagnosis necessarily carries with it a finding that the child was sexually abused." (Tr. 245).

 Again, testimony encompassed by Evidence Rule 704(b) is inadmissible because it invades "the province of the jurors in determining what weight they should place upon a witness's testimony." *Rose v. State*, 846 N.E.2d 363, 367 (Ind.Ct.App. 2006). Therefore, "[i]n child molesting cases, adult witnesses are prohibited from making direct assertions as to their belief in the child's testimony[.]" *Stout*, 612 N.E.2d at 1080. Expert testimony, however, is admissible to show that an individual's subsequent behavior is consistent or inconsistent with that observed from other victims. *Id.*

Here, we cannot necessarily say that Dr. Spencer's testimony constituted vouching testimony. Dr. Spencer did not specifically state that she believed G.S.'s allegations or testimony. Her testimony merely explained that G.S.'s behaviors were inconsistent with prior diagnoses. *Cf. Weis v. State*, 825 N.E.2d 896, 901 (Ind.Ct.App. 2005) (finding that a police officer's testimony that "with the alleged perpetrator being [the victim's] stepfather, there is no contact" and that "[t]his is a person who has caused great damage so we don't have any contact," did not impermissibly invade the jury's province as it merely explained the course of the investigation and protocol on restricting visitation with an alleged abuser without judging the victim's credibility).

Moreover, Dr. Spencer's testimony regarding G.S.'s behavior, including her diagnosis of PTSD based upon that behavior, only would tend to show that G.S. had suffered a traumatic experience and that her behavior was consistent with that experience;[4] it would not establish whether Dr. Spencer believed G.S.'s allegations regarding sexual molestation to be credible or her testimony to be the truth. We therefore find that the trial court erred in excluding Dr. Spencer's testimony.

### iii. *G.S.'s grandmother*

 The State also asserts that the trial court abused its discretion in excluding the testimony of G.S.'s grandmother, P.S., as vouching. We agree.

P.S. testified that DCS placed G.S. in her home in June of 2008, after G.S. alleged that Velasquez had molested her. The State then examined P.S. as follows:

[The State]: . . . [W]ithout getting into anything that [G.S.] may have said . . . what was [G.S.]'s behavior, what was [G.S.] like when she first moved into your home . . . ?

A. Well, unfortunately she was screaming, having nightmares, bedwetting, she was always afraid that. . . .

(Tr. 275).

Velasquez objected to the testimony. Finding that the "testimony shall certainly goes [sic] with . . . Doctor Spencer's testimony concerning predicates for her diagnosis that was not admitted that was most certainly placed on record of what you see in [PTSD]," the trial court sustained the objection. (Tr. 276).

P.S. was testifying about G.S.'s demeanor, based upon her personal observations. She did not offer an opinion as to any allegations G.S. may have made, G.S.'s credibility, or the truthfulness of her testi-

---

4. For instance, it is undisputed that Velasquez often hit G.S. with a stick.

mony. The trial court therefore erred in excluding P.S.'s testimony.[5] *See Malinski v. State,* 794 N.E.2d 1071, 1083 (Ind.2003) (finding that Evidence Rule 704(b) did not apply as the witnesses were testifying about the victim's demeanor, not whether any statement made by the victim was true).

In conclusion, we find no abuse of discretion in the giving of a preliminary instruction pursuant to Evidence Rules 105 and 404(b). We do, however, find that the trial court erred in excluding the testimony of witnesses under Evidence Rules 802 and 704(b).[6]

Affirmed in part and reversed in part.

BRADFORD, J., and BROWN, J., concur.

**5.** We note Velasquez concedes that "the trial court should have permitted the witnesses Kline and P.S. to testify as to their personal observations of G.S.'s demeanor at relevant times post-dating the alleged abuse." Velasquez's Br. at 29. He, however, contends that "the court's exclusion of the evidence on grounds of 'vouching' was premised upon a finding of fact not reviewable under I.C. § 35–38–4–2(4)." We disagree.

**6.** Although we find that the trial court erred in the exclusion of testimony, double jeopardy principles bar a second trial as Velasquez was acquitted of the charges. *See State v. Lloyd,* 800 N.E.2d 196, 200 n. 3 (Ind.Ct.App.2003).