**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**ANDREA L. CIOBANU**
**ALEX BEEMAN**
Ciobanu Law, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**CYNTHIA L. PLOUGHE**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| MICHAEL WIDUP, ) | |
| ) | |
| Appellant-Defendant, ) | |
| ) | |
| vs. ) | No. 49A02-1310-CR-861 |
| ) | |
| STATE OF INDIANA, ) | |
| ) | |
| Appellee-Plaintiff. ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven J. Rubick, Magistrate
Cause No. 49G01-1208-FA-56768

**May 28, 2014**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BAKER, Judge**

Appellant-defendant Michael Widup appeals his conviction for class A felony Child Molesting[1] and his four convictions for class C felony Child Molesting.[2] Widup raises several issues on appeal, arguing that: 1) the State elicited improper vouching testimony from witnesses; 2) the prosecutor engaged in misconduct that placed the defendant in grave peril and amounted to fundamental error; 3) the failure to instruct the jury with regard to jury unanimity was fundamental error; 4) his four convictions for class C child molesting violate double jeopardy principles; 5) the State did not provide sufficient evidence to support his convictions as the testimony of the alleged victim, Z.D., was incredibly dubious; and 6) this Court should create a rule requiring corroborating evidence when the sole witness is the victim in child molestation cases. We find that there was no improper vouching testimony or prosecutorial misconduct that amounted to fundamental error and decline to create a rule requiring corroborating evidence as suggested by Widup. We do find that Widup's conviction for Count V class C child molesting violates double jeopardy, as the acts charged were preparatory in nature to the act for which he was convicted of class A child molesting. Therefore, we affirm in part and vacate Widup's conviction and sentence on Count V.

## FACTS

Widup is Z.D.'s biological father. However, when Z.D. was four years old she moved to North Carolina with her mother, stepfather, and three half-brothers; Widup has

---

[1] Ind. Code 35-42-4-3(a).

[2] I.C. 35-42-4-3(b).

2

played no role in her life since Z.D. was six months old. When Z.D was thirteen, Widup contacted her mother on Facebook, and Z.D.'s mother arranged for the two of them to speak on the phone, via Skype, or through internet instant messenger. Both Widup and Z.D. showed interest in building a relationship. At trial, Z.D testified that Widup told her she had become a "beautiful young girl," and that Widup would call her frequently. Tr. p. 17.

In the summer of 2010, Z.D.'s stepfather brought her and her brothers to Indiana to visit their grandmother in Kokomo. There was an initial meeting between Z.D. and Widup in a Wal-Mart parking lot, and in July 2010, Z.D. went to stay with Widup for a time.

Widup took Z.D. to stay in the house he shared with three other men, including Widup's brother. Widup was the manager of a bar and grill in Fishers and would leave for work early in the morning and return home around 8:00 p.m. or 9:00 p.m. Z.D. testified that she slept in Widup's bed during her stay. Z.D. testified that Widup talked to her in an "intimate way," and that he would use "inappropriate touches," and ask her if she "liked that." Tr. p. 27-28. She also testified that she was uncomfortable with the way he kissed her in private, stating that he would kiss her with an open mouth and "put his tongue in [her] mouth." Id. at 31.

Z.D. testified that, on her last night with Widup, he woke her up by rubbing lotion all over her body, removed her bra, and lifted her dress. He then put his hands inside her underwear and touched her vagina and buttocks. Z.D. did not understand what was

3

happening, and felt confused. Later that night, Z.D. was on the porch with Widup, and he pulled her on top of himself and began kissing her neck and breasts in a "sexual way." Tr. p. 37-38. When Z.D. told him to let her up, he told her that "nobody's going to understand us." Id. at 37. When Z.D. went into the house, Widup followed her.

Z.D. laid down on the bed, facing the wall. Widup then lay down next to her and began holding her. Then he pulled Z.D. onto her back and began to kiss her neck and place his hands up and down her body. He placed his hands inside her underwear and onto her vagina and inserted his finger into her vagina multiple times. He then asked Z.D. if he should stop, and she told him "yes." Tr. p. 43. Z.D. fell asleep, and when she woke up, Widup had gone to work.

Z.D. then texted her grandmother and asked her to come get her, but Z.D.'s grandmother did not know where Widup lived. When Widup returned home, he found that Z.D. had packed her belongings. Z.D. testified that he began crying and apologizing, but he drove Z.D. to meet her grandmother and uncle so that she could return to Kokomo with them.

Z.D. did not immediately tell anyone what happened during her stay with Widup. However, both her grandmother and uncle testified that they noticed a change in Z.D. after she returned from Widup's home. Her uncle testified that, before her visit with Widup, Z.D. had been animated and cheerful, but that after her visit, she had become "dark, angry, and sad." Tr. p. 105. Z.D.'s grandmother also noticed that Z.D. had

4

developed an obsessive habit of bathing herself, sometimes taking five showers a day, and complained about "never being clean." Id. at 119.

Z.D. then began to feel as though she wanted to tell someone about the incidents with Widup. One night, at a local K-Mart, she told her uncle what had happened while she visited with Widup. Z.D.'s uncle testified that Z.D. was embarrassed, ashamed, and scared. Z.D. made her uncle promise that he would tell no one. Later, during an argument about chores with her grandmother, Z.D. blurted out that she had been abused by Widup. Again, Z.D. asked that her grandmother keep what had happened a secret, and her grandmother agreed that she would not tell if Z.D. would seek counseling. Z.D. told a therapist what had happened, and, upon learning of the abuse, the therapist reported it to the police.

On August 16, 2012, the State charged Widup with Counts I and II of class A felony child molesting and with Counts III, IV, V, and VI of class C felony child molesting.

Widup's jury trial began on August 28, 2013; the jury found Widup guilty on all counts except Count II class A felony child molesting. On September 24, 2013, the trial court sentenced Widup to thirty years on Count I and to four years each for Count III, IV, V, and VI. The trial court ordered the sentences to be served concurrently, resulting in an aggregate sentence of thirty years.

Widup now appeals.

5

## DISCUSSION AND DECISION

### I. Improper Vouching Testimony

Widup contends that the testimonies of Z.D.'s uncle, Z.D.'s grandmother, and Detective Looper constituted improper vouching by a witness. More particularly, Widup alleges that the three witnesses' testimony had no other purpose than to assert their belief that Z.D. was telling the truth.

At the outset, we note that Widup failed to make a contemporaneous objection at trial. Failure to object to the admission of evidence at trial normally results in waiver and precludes appellate review unless its admission constitutes fundamental error. Willey v. State, 712 N.E.2d 434, 444–45 (Ind. 1999). Fundamental error is a "substantial, blatant violation of due process" so prejudicial to the rights of the defendant that it renders a fair trial impossible. Hall v. State, 937 N.E.2d 911, 913 (Ind. Ct. App. 2010).

Widup asserts that the admission of the testimony given by Z.D.'s uncle, Z.D.'s grandmother, and Detective Looper constituted fundamental error. Indiana Evidence Rule 704 states:

> a) In General--Not Automatically Objectionable. Testimony in the form of an opinion or inference otherwise admissible is not objectionable just because it embraces an ultimate issue.
> (b) Exception. Witnesses may not testify to opinions concerning intent, guilt, or innocence in a criminal case; the truth or falsity of allegations; whether a witness has testified truthfully; or legal conclusions.

6

The testimony encompassed by Indiana Evidence Rule 704(B) is not admissible because it invades "the province of the jurors in determining what weight they should place upon a witness's testimony." Rose v. State, 846 N.E.2d 363, 367 (Ind. Ct. App. 2006).

Widup points to several statements he believes were improper vouching. He argues that Z.D.'s grandmother improperly testified that Z.D. was "anxious," "terrified," "paralyzed," "angry," "somewhat distant," and afraid. Tr. p. 109-111. He also contends that it was improper for Z.D.'s grandmother to testify that, after Z.D.'s visit with Widup, Z.D. began showering constantly because she didn't feel clean. Additionally, Widup states that Z.D.'s uncle's testimony about Z.D.'s emotional demeanor and physical behavior after the alleged incidents was improper. Id. at 105. Widup also contends that Detective Shawn Looper's testimony constituted improper vouching because he spoke to the way that children often behave in sex abuse cases and discussed the average delay of disclosure in child abuse cases.

To support his argument that the witnesses engaged in improper vouching, Widup cites State v. Velasquez. 944 N.E.2d 34 (Ind. Ct. App. 2011). In Velasquez, this Court asserted that, in child molesting cases, an adult witness may not make direct assertions as to their belief in the Child's testimony. Velasquez, 944 N.E.2d at 43. However, Widup's reliance on Velasquez is misplaced. None of the testimony he alleges to be improper vouching amounts to a direct assertion as to the witnesses belief in Z.D.'s truthfulness. A witness may offer testimony about a witness's demeanor as long as he or she does not offer an opinion as to the veracity of that witness's testimony. Malinksi v. State, 794

7

N.E.2d 1071, 1083 (Ind. 2003). None of the statements cited by Widup offer an opinion as to Z.D.'s veracity. Therefore, this argument fails.

## II. Prosecutorial Misconduct

Widup also contends that the prosecutor engaged in prosecutorial misconduct. More particularly, he alleges that the prosecutor committed misconduct by improperly eliciting improper vouching testimony from witnesses, vouching for Z.D. in closing argument, and stating that the uncorroborated testimony of the victim was sufficient for a jury to convict. Widup also alleges that the prosecutor engaged in misconduct by arguing facts not in evidence and misrepresenting the elements of Count I class A felony child molesting. Further, Widup alleges that the prosecutor improperly commented on his constitutional right to subpoena witnesses and suggested that Widup bore the burden of proof.

When reviewing a claim of prosecutorial misconduct, we will first determine whether the prosecutor engaged in misconduct. Carter v. State, 956 N.E.2d 167, 169 (Ind. Ct. App. 2011). If this Court finds that there has been misconduct, we then determine "whether the misconduct, under all of the circumstances, placed the defendant in a position of grave peril to which he should not have been subjected." Id. The gravity of the peril is not measured by the degree of impropriety of the conduct but, rather, by the probable persuasive effect of the misconduct on the jury's decision. Booher v. State 773 N.E.2d 814, 817 (Ind. 2002). In order to preserve a claim of prosecutorial misconduct,

8

the defendant must both object to the alleged misconduct and request an admonishment and move for a mistrial. Cowan v. State, 783 N.E.2d 1270, 1277.

However, as Widup did not preserve his claim by making a contemporaneous objection and a request for an admonishment and mistrial, he must establish both the grounds for prosecutorial misconduct as well as the grounds for fundamental error to succeed on his claim. Booher, 773 N.E.2d at 818. Fundamental error is a "substantial, blatant violation of due process," so prejudicial to the rights of the defendant that it renders a fair trial impossible. Hall v. State, 937 N.E.2d 911, 913 (Ind. Ct. App. 2010).

First, as regards Widup's contention that the prosecutor elicited improper vouching testimony from witnesses, we have already established above that the witnesses in question did not improperly vouch for Z.D. during their testimony. Therefore, we turn to Widup's second contention that the prosecutor engaged in improper vouching for Z.D. in closing argument.

A prosecutor may not state his or her personal opinion regarding the credibility of a witness during trial, as such statements amount to vouching for a witness. Thomas v. State, 965 N.E.2d 70, 77 (Ind. Ct. App. 2012), trans. denied. However, "a prosecutor may comment as to witness credibility if the assertions are based on reasons arising from the evidence presented at trial." Id.

Widup argues that several of the prosecutor's comments constitute improper vouching. Widup cites, for example, the prosecutor's statement that ". . . I absolutely believe Z.D.'s testimony is credible and clear . . ." and the statement that ". . . I believe he

9

is guilty of each and every one of these counts . . ." Tr. p. 219, 222-223. However, as the use of ellipses suggests, Widup has taken these statements out of context. While the prosecutor may have made too liberal use of the first person, each statement Widup suggests constitutes prosecutorial misconduct either precedes or follows the prosecutor's explanation of his statement in relation to the evidence. There was no improper vouching in the prosecutor's statements. Rather, he spoke to the credibility of the witnesses based on reasons arising from the evidence presented at trial.

Widup next contends that the prosecutor engaged in an act of prosecutorial misconduct when, during his closing argument, he told the jury that the uncorroborated testimony of the victim was sufficient evidence to support a conviction. To bolster his argument, Widup relies on Ludy v. State, in which our Supreme Court held that to instruct the jury that a conviction may be based on uncorroborated testimony of the victim was reversible error. 784 N.E.2d 459, 462 (Ind. 2003).

However, Widup's reliance on Ludy is misplaced. While it is true that the trial court may not give the jury such an instruction, that is not what happened here. In Dill v. State, our Supreme Court found that the trial court erred in giving a flight instruction to the jury, and it noted that, although the evidence of flight might "be a proper subject for counsel's closing argument, it does not follow that a trial court should give a discrete instruction highlighting such evidence." 741 N.E.2d 1230, 1232 (Ind. 2001).

Here, in closing argument, the prosecutor noted that Z.D.'s testimony was uncorroborated and reminded the jury that they could convict Widup on her testimony

10

alone if they found Z.D. to be truthful.  This is a correct statement of Indiana law, and it was not improper for the prosecutor to state the law in his closing argument.  See Deaton v. State, 999 N.E.2d 452, 456 (Ind. Ct. App. 2013) (holding that the prosecutor's correct statement during closing argument that a victim's uncorroborated testimony was sufficient evidence to convict was not prosecutorial misconduct).  Therefore, this argument fails.

Widup also argues that the prosecutor engaged in misconduct by arguing facts not in evidence and analogizing Widup to the Nazis. During closing argument, the prosecutor stated that:

> If a person is interested in young teenage looking girls do you think he's going to take advantage of the gregarious, outspoken, self-confident kid -- do you think that's the kid he's going to pick if he wants to stay out of prison or is he going to take the kid who comes with baggage and you know the answer to that question -- it's rhetorical.  What he wants you to do is not to only let him use the hand of cards she was dealt -- she was dealt -- she's a child. She is a child today -- none of this is her fault.  She is a child. She is a child today -- the hand of cards she was dealt and use that and use that not only as her vulnerability but as to attack her credibility and to allow him to go free . . .

Tr. p. 239-240.   The prosecutor also talked about Anne Frank and other "damaged" children who were taken in during the Nazi invasion, arguing that even children who were "damaged goods" needed a "safe place to be."  Id. at 241-242.

Here, the prosecutor was not arguing facts not in evidence or analogizing Widup to a Nazi; he was responding to the defense's contention that Z.D. was "damaged goods" and arguing that her "baggage" did not make her less credible and might even make her

11

vulnerable to abuse. Id. at 237, 239-42. The prosecutor's statements did not constitute prosecutorial misconduct. Thus, this argument fails.

Widup next argues that the prosecutor engaged in prosecutorial misconduct by misrepresenting the elements of Count I child molesting as a classy A felony. Widup contends that the prosecutor misled the jury when he told them: "If you believe – remember if you believe that this man – and he did – stick his finger into his daughter's – biological daughters – vagina at anytime [sic] that she was staying at his house – if he ever put his finger in her vagina he's guilty of Count 1 – it's that simple." Id. at 219.

Here, Widup was charged with child molesting by performing or submitting to deviate sexual conduct with Z.D., a child under the age of fourteen. Under Indiana Code section 35-42-4-3, "A person who, with a child under fourteen (14) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting." Deviate sexual conduct is defined as the "penetration of the sex organ of a person by an object." Ind. Code § 35-31.5-2-94. The prosecutor's above comment did not misrepresent the elements of Count I. Thus, this argument also fails.

Finally, Widup argues that the prosecutor engaged in misconduct by improperly commenting on Widup's constitutional right to subpoena witnesses and in suggesting that Widup had the burden of proof. During cross-examination, the prosecutor elicited testimony from Widup as to why he had not subpoenaed his roommates or his son to be witnesses and corroborate Widup's testimony:

[State]: And you can bring witnesses in to court and have them testify about the case, is that right?
[Widup]: I believe so, yeah.
[State]: Okay, Where are your roommates?
[Widup]: We didn't subpoena them. I don't really know why.
[State]: Okay. Well, they're not here, right?
[Widup]: Uh-huh.
[State]: The roommates -- your brother, these two other people we don't know who they are right- they're not here --

Tr. p. 194. The prosecutor continued on to ask why Widup's son had not testified on his behalf.

Widup points us to Lainhart, in which this Court stated that it is improper for the prosecutor to suggest that a defendant bears some burden of proof. Lainhart v. State, 916 N.E.2d 924, 936 (Ind. Ct. App. 2009) (stating that "[w]hile the State may argue to the jury the uncontradicted nature of its own case, the State may not suggest that the defendant has the burden of proof by inquiring in closing argument why the defendant did not call witnesses to testify on his behalf"). We do agree with Widup that the prosecutor's comments concerning Widup's failure to call witnesses were improper.

However, in Flowers, when the prosecutor made comments about the defendant's failure to call his own witness and those comments may have suggested that the defendant bore some burden of proof, our Supreme Court held that:

the jury here was properly instructed that the defendant was not required to present any evidence or prove his innocence. Accordingly, we find that any impropriety in the prosecutor's closing argument was de minimis and overcome by the preliminary and final instructions. The trial court did not err in denying Flowers' motion for mistrial.

Flowers v. State, 738 N.E.2d 1051.

13

Here, as in Flowers, the jury was instructed that Widup was not required to present any evidence to prove his innocence or to prove or explain anything. Appellant's App. p. 54. As noted above, Widup failed to properly preserve this issue for appeal, and must prove fundamental error. As any error in the prosecutor's comments was de minimis, this argument fails. Booher, 773 N.E.2d at 818.

## II. Failure to Instruct the Jury with Regard to Jury Unanimity

Widup next argues that the trial court committed fundamental error when it failed to instruct the jury regarding unanimity.

At the outset, we note that Widup did not object to the trial court's instruction or proffer an instruction of his own. A defendant who fails to object to an instruction at trial waives any challenge to that instruction on appeal. Mitchell v. State, 726 N.E.2d 1228, 1241 (Ind. 2000). Therefore we will only review the issue if we find that fundamental error occurred. Bruno v. State, 774 N.E.2d 880, 883 (Ind. 2002). As noted above, fundamental error is a "substantial, blatant violation of due process," so prejudicial to the rights of the defendant that it renders a fair trial impossible. Hall, 937 N.E.2d at 913.

Widup relies on Baker v. State to support his argument that the trial court's failure to provide an instruction on jury unanimity was error. 948 N.E.2d 1169, 1177 (Ind. 2011). In Baker, our Supreme Court determined that we will apply the California Rule concerning unanimity:

> We adopt the reasoning of the California Supreme Court in Jones, supra and hold that the State may in its discretion designate a specific act (or acts)

14

on which it relies to prove a particular charge. However if the State decides not to so designate, then the jurors should be instructed that in order to convict the defendant they must either unanimously agree that the defendant committed the same act or acts or that the defendant committed all of the acts described by the victim and included within the time period charged.

Id. at 1177. The Baker Court found that a jury instruction that did not advise the jury that, in order to convict, "the jury must either unanimously agree that he committed the same act or acts or that he committed all of the acts described by the victim and included within the time period charged," was not an adequate instruction on jury unanimity. Id. at 1178.

While we find that the jury instruction here, which simply stated "do not sign any verdict form for which there is not unanimous agreement," was not adequate under the California rule, the error does not amount to fundamental error. There is no debate as to which acts related to particular charges. Here, the prosecutor went to great length in the closing argument to establish separate acts which related to the charges. Tr. p. 220-222. Furthermore, the jury's ability to distinguish between particular acts in relation to the charges is evidenced by the fact that the jury convicted Widup of only one count of deviate sexual conduct with a minor.

### III. Double Jeopardy Violation

Widup also argues that his four convictions for class C felony child molesting violate double jeopardy principles. The Double Jeopardy Clause of the Indiana Constitution provides in part: "No person shall be put in jeopardy twice for the same

15

offense." Ind. Const. art. 1, § 14. Two or more offenses are the same offense if "with respect to either the statutory elements of the challenged crimes or the actual evidence used to convict, the essential elements of one challenged offense also establish the essential elements of another challenged offense." Richardson v. State, 717 N.E.2d 32, 49 (Ind.1999). Where the challenged offenses are alleged multiple violations of the same statute, the same elements test is inapplicable. Rexroat v. State, 966 N.E.2d 165, 169 (Ind. Ct. App. 2012).

Our Supreme Court has held that there is no double jeopardy violation as long as "each conviction require[s] proof of at least one unique evidentiary fact." Bald v. State, 776 N.E.2d 1170, 1172 (Ind. 2002). To show that two challenged offenses constitute the same offense under the actual evidence prong of the double jeopardy test, a defendant must show "a reasonable possibility that the evidentiary facts used by the factfinder to establish the essential elements of one offense may also have been used to establish the essential elements of a second challenged offense." Rexroat, 996 N.E.2d at 169. To determine which facts were used by the jury, a reviewing court will examine the charging information, evidence, arguments, and jury instructions. Davis v. State, 770 N.E.2d 319, 324 (Ind. 2002).

As Widup points out, the charging information in this case does not distinguish the facts which support each charged Count. Appellant's App. p. 19-21. However, Z.D. testified to four distinct instances of class C felony child molesting, which the prosecutor outlined separately in closing argument:

16

> As I would submit to you the evidence shows as to Count 3 that when he came home and he had the massage – or he was massaging her with the lotion . . . when he is putting the lotion all over her body . . . he committed child molest as a class C felony as to Count 3. As to Count 4, that is essentially the porch, the kissing of the neck . . . as to Count 5 I – I submit to you that that encompasses most of the touching and everything but the touching that occurred besides the fingers going into the vagina . . . they go back to the room and she describes all the places on her body . . . he is touching . . . As to Count 6 . . . if you find that the kissing – the open mouth kissing . . . an open mouth kiss that's a sexual touching of a child under this particular age by a person over a particular age is enough to sustain a conviction for class C child molest.

Tr. p. 220-222. We conclude that, under these circumstances, there is not a reasonable possibility that the evidentiary facts establish the essential elements of one offense may also have been used to establish the essential elements of another offense. Thus, this argument fails.

Notwithstanding this conclusion, Widup also argues that the actions that led to his conviction for class C felony child molesting were preparatory to the deviant sexual conduct that led to his conviction for class A felony child molesting.

When an act of fondling is incidental and preparatory to an act of deviate sexual conduct and both acts take place within an identical incident, the prohibition against double jeopardy will not permit convictions based on both acts. Bowling v State, 560 N.E.2d 658, 660 (Ind. 1990).

Here, Widup's conviction for Count V was based on his action of fondling Z.D. that occurred directly prior to the deviate sexual conduct that led to his conviction for

17

class A felony child molesting. Therefore, the conviction and sentence imposed on Count V class C felony child molesting cannot stand.

## IV. Sufficiency of the Evidence

Widup next contends that insufficient evidence was presented to convict him on Count VI, class C felony child molesting. More particularly, Widup argues that Z.D.'s testimony was incredibly dubious and that the State did not prove that the open mouth kiss was made to arouse or satisfy sexual desires.

When reviewing the sufficiency of the evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the trial court's decision. Drane v. State, 867 N.E.2d 144, 146 (Ind. 2007). It is the fact-finder's role, and not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. Id. When we are confronted with conflicting evidence, we consider it most favorably to the trial court's ruling. Id. We will affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. Id. Therefore, it is not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the trial court's decision. Id. at 147.

Under the "incredible dubiosity rule" we may "impinge on the jury's responsibility to judge the credibility of the witness only when it has confronted inherently improbable testimony or coerced, equivocal, wholly uncorroborated testimony

18

of incredible dubiosity." Rodgers v. State, 422 N.E.2d 1211, 1213 (Ind. 1981). We will reverse a conviction if the sole witness presents inherently improbable testimony and there is no circumstantial evidence of the defendant's guilt. White v. State, 706 N.E.2d 1078, 1079-80 (Ind. 1999). Further, we will overturn a conviction based upon the incredible dubiosity rule when the testimony is so incredibly dubious or inherently improbable that it runs counter to human experience, and no reasonable person could believe it. Baumgartner v. State, 891 N.E.2d 1131, 1138 (Ind. Ct. App. 2008).

Widup alleges that Z.D.'s testimony was incredibly dubious because she could not remember certain facts surrounding the child molesting incident. He points to her inability to remember what dress she was wearing, what time of night it was, and how long the incident lasted. Tr. p. 80-81, 74-77, 43. However, this is not the test for incredible dubiosity. Z.D.'s testimony is not incredibly dubious because she could not remember certain facts or because her testimony regarding the molestation contained inconsistencies. Cowen v. State, 783 N.E.2d 1270. Therefore, this argument fails.

Widup also argues that the evidence was insufficient to support his conviction on Count VI class C felony child molesting because the State failed to prove that the open-mouthed kiss was made with the intent to arouse or satisfy sexual desires.

Indiana Code section 35-42-4-3(b) does contain a mental state as an element of the crime of child molesting. The touching or fondling referred to in the statute must have been done with the "intent to arouse or satisfy the sexual desires of either the child or the older person." However, the element of intent may be proven by circumstantial evidence

19

alone, and it is well-established that knowledge and intent may be inferred from the facts and circumstances of each case. Lykins v. State, 726 N.E.2d 1265, 1270 (Ind. Ct. App. 2000). The State is not required to prove intent by direct and positive evidence. Id. at 1271.

Here, there was enough evidence to allow the jury to infer that Widup had the requisite intent. Z.D.'s testimony that Widup kissed her with an open mouth and asked her if she liked it would allow a reasonable jury to come to this conclusion. Tr. p. 27, 31. Thus, this argument fails.

### VI. A Rule Requiring Corroborating Evidence

Widup next asks this Court to establish a rule requiring corroborating evidence in child molestation cases where the sole evidence against the defendant is the testimony of the victim. To support this contention, he points to the dissenting opinion in Leyva v. State, 971 N.E.2d 669, 703 (Ind. Ct. App. 2012). The dissent suggested that we might consider requiring corroborating evidence when the sole evidence in a child molestation case is the testimony of the victim.

Widup's request would ask this court to change the current law. The dissenting opinion in Leyva is the opinion of one Judge on this Court, and the current law is clear: the uncorroborated testimony of the victim is sufficient to sustain a conviction for child molesting. Jones v. State, 445 N.E.2d 98 (Ind. 1983). We decline Widup's request to establish a rule requiring corroborating evidence.

We vacate Widup's conviction and sentence imposed on Count V class C felony child molesting, and affirm the remainder of the judgment of the trial court.

BARNES, J., and CRONE, J., concur.